AUDITOR GENERAL *v.* OLEZNICZAK.

1. CONVICTS—PRISON REIMBURSEMENT ACT—CIVIL LIABILITY.
   The prison reimbursement act imposes a civil liability on all prisoners able to pay for expenses of maintenance in prison whether they were sentenced before or after the effective date of such act but the liability does not extend to any period of imprisonment prior to the effective date of the act (Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937).

Conferring benefits on person without person's consent, see Restatement, Restitution, § 116.

2. SAME—REIMBURSEMENT FOR KEEP AND MAINTENANCE A CIVIL OBLIGATION.

 The statutory obligation of a prisoner to pay for his keep and maintenance, if he has a sufficient estate, is civil, rather than criminal, in character (Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937).

3. STATUTES—RETROSPECTIVE OPERATION.

 A statute is not retrospective, in a sense forbidding it, because a part of the requisites for its action and application is drawn from a time antedating its passage.

4. CONSTITUTIONAL LAW—INSANE PERSONS—CRIMINAL PENALTIES.

 The visitation of a criminal penalty upon a person simply because he is insane would be a substantive denial of due process of law.

5. EXEMPTIONS — CONVICTS — VETERANS — UNITED STATES SAVINGS AND TREASURY BONDS.

 United States savings bonds or treasury bonds purchased with funds received by the guardian from the veterans' administration are not exempt from liability under the prison reimbursement act for keep and maintenance of veteran in prison (38 USCA, § 454a; Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937).

6. SAME—BANK DEPOSITS—VETERANS—CONVICTS.

 Deposits in a bank account representing proceeds of checks received by guardian from pension and insurance payments from veterans' administration for express purpose of providing the beneficiary of such funds with needed support are not exempt from liability under prison reimbursement act for keep and maintenance of a veteran serving sentence in prison (38 USCA, § 454a; Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937).

7. SAME—VETERANS' ADMINISTRATION PAYMENTS—KEEP AND MAINTENANCE BY STATE.

 Exemption of pension and insurance payments from the veterans' administration from taxation and claims of creditors by Federal statutes does not mean they are unavailable for support of the veteran when he is a ward of the State (38 USCA, § 454a; Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937).

8. SAME—BONUS BONDS—VETERANS—CONVICTS.

 Veterans' adjusted compensation bonds received as a bonus from the Federal government, not having been given to the

veteran because of his need for· support and exempted by
Federal statute from legal or equitable process, are not sub-
ject to claim of State for reimbursement under the prison
reimbursement act for keep and maintenance of veteran
while serving a sentence in prison (38 USCA, §§ 618, 686c,
Act No. 253, Pub. Acts 1935, as amended by Act No. 272,
Pub. Acts 1937).

9. Limitation of Actions—Counterclaim Against State—Main-
tenance of Criminally Insane Persons.

In auditor general's proceeding to recover for keep and main-
tenance .of a veteran who had been sentenced to life im-
prisonment wherein guardian of veteran counterclaimed for
amount ordered paid the State for his maintenance at a
hospital for the· criminally insane, order denying recovery
on counterclaim for sum paid more than six years previously
was proper (3 Comp. Laws 1929, § 13976; Act No. 253, Pub.
Acts 1935, as amended by Act No. 272, Pub. Acts 1937).

10. Insane Persons—Estates—Convicts—Keep and Mainte-
nance While in Hospital—Transfer.

The estate of an insane criminal who is confined at a State
hospital for the criminally insane may be ̓subjected to the
payment for his keep and maintenance while confined in
the hospital without an order of a probate court for con-
finement in such hospital in view of specific and exclusive
provision of statute relative to treatment of mental disease
patients vesting power of transfer from prison to such a
hospital in officer in charge of prison (2 Comp. Laws 1929,
§ 6878, as amended by Act No. 220, Pub. Acts 1931; §§ 6894,
6932).

11. Judgment — Collateral Attack — Jurisdiction — Probate
Court—Orders Reimbursing State for Keep of an Insane
Convict.

Notwithstanding fact that probate court orders requiring re-
imbursement of State for keep and maintenance·of a convict
while confined in a hospital for the criminally insane were
based upon petitions of the auditor general which recited
that recovery was being sought under statutes then repealed,
counterclaim by guardian for amounts paid thereunder is
not allowed where a valid statute was in existence when the
orders and petitions were made, in view of the fact that such
is a collateral attack upon the jurisdiction of the probate
court to make the orders at all (1 Comp. Laws 1915, §§ 1326,
1328; Comp. Laws 1929, §§ 6894, 6930, 14148).

12. SAME—FORMAL DEFECTS.

Once judgment is rendered, merely formal defects in the pleadings which do not affect the right or justice of the judgment may be disregarded (3 Comp. Laws 1929, § 14148).

13. SAME—PROBATE COURT ORDERS—COLLATERAL ATTACK—JURISDICTION.

Orders of the probate court from which no appeal has been taken are judgments and within the protection from collateral attack even on the ground that the court had no jurisdiction over the subject matter.

14. COSTS—PUBLIC QUESTION—REIMBURSEMENT FOR KEEP AND MAINTENANCE OF CONVICTS.

In proceeding to recover from the estate of a veteran for keep and maintenance while serving a prison sentence, no costs are allowed, a public question being involved (38 USCA, §§ 454a, 618, 686c; Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937).

NORTH and STARR, JJ., dissenting.

Appeal from Bay; McCormick (James L.), J. Submitted April 15, 1942. (Docket No. 4, Calendar No. 41,813.) Decided July 1, 1942.

Petition by Vernon J. Brown, Auditor General of the State of Michigan, against Asa M. Burnett, guardian of Roman Olezniczak, a mentally incompetent person, for reimbursement under Act No. 253, Pub. Acts 1935. Cross petition by defendant against plaintiff for refund of amounts paid the State of Michigan. Frank T. Hines, Administrator of Veterans' Affairs, intervened. Petition dismissed. Plaintiff appeals. Defendant cross appeals. Reversed.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Charles R. MacLean* and *Daniel J. O'Hara,* Assistants Attorney General, for plaintiff.

*Carl H. Smith,* for defendant.

*Walter H. E. Scott,* for intervener.

North, J. (*dissenting*).  On the 5th of June, 1940, the auditor general of the State of Michigan filed a petition in the circuit court of Bay county by which the relief sought was an order subjecting the estate of Roman Olezniczak to payment to the State or reimbursement for the expense incurred incident to the maintenance of Roman Olezniczak as an inmate of the State prison of southern Michigan at Jackson, Michigan.  Having been convicted upon his plea of guilty of murder in the first degree, Roman Olezniczak was sentenced on February 4, 1921, to life imprisonment.  The defendant, Asa M. Burnett, is the guardian of the estate of Roman Olezniczak. The principal defendant, Roman Olezniczak, is a war veteran who receives a pension or adjusted compensation from the United States; and Frank T. Hines, administrator of veterans' affairs, was permitted to intervene as a party defendant.  See Act No. 321, § 3, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 829–3, Stat. Ann. 1941 Cum. Supp. § 4.971 [3]).  The proceedings, which were brought to issue by answers of the respective defendants, are prosecuted by the attorney general under the prison reimbursement act, being Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 17667–11 *et seq.*, Stat. Ann. § 28.1701 *et seq.* and Stat. Ann. 1941 Cum. Supp. § 28.1709).  The defense urged is that, as sought to be applied to the facts in this case, the act is unconstitutional.  The circuit judge so held, and the auditor general has appealed.  There is also a cross appeal by the defendant guardian which will be hereinafter noted.

We are presently concerned principally with that portion of the act which reads:

"At the time of the hearing, if it appear that such person or prisoner has an estate which ought to be subjected to the claim of the State, * * * the court shall make an order requiring the guardian or any person or corporation so possessed of the estate belonging to said prisoner to appropriate and apply such estate to the payment of so much or such part thereof as may appear to be proper toward reimbursing the State for the expenses theretofore incurred by it on behalf of such prisoner, and such part thereof towards reimbursing the State for the future expenses which it must pay on his behalf." Act No. 253, § 4, Pub. Acts 1935.

When sentence was imposed on Roman Olezniczak in 1921, there was no such provision in the law of this State as that now contained in the prison reimbursement act. However, there is no attempt in the instant case to subject the estate of Roman Olezniczak to a charge for reimbursing the State for his care during the period prior to the effective date of Act No. 253, Pub. Acts 1935; but reimbursement is sought for the period subsequent to such effective date. It is obvious that the instant case differs materially in its factual aspect from *Auditor General* v. *Hall*, 300 Mich. 215 (139 A. L. R. 1022), wherein this same act was involved. In the *Hall Case* his commitment was subsequent (not prior) to the effective date of the prison reimbursement act.

Among the questions raised by defendants in asserting invalidity of the prison reimbursement act as it is sought to be applied in the instant case is the following:

"Does the Michigan prison reimbursement act, as applied to one confined prior to the passage of

the act, operate as unconstitutional retroactive legislation in violation of the due process provisions of amendment 14, § 1, Federal Constitution, and article 2, § 16 of the Michigan Constitution of 1908?''

Defendants also assert that under the circumstances to which the prison reimbursement act is sought to be applied in the instant case, it is constitutionally defective in that it would increase the severity of the penalty imposed upon Roman Olezniczak and also would deprive him of his property without due process of law.

Not all retroactive legislative acts are unconstitutional. *Philip* v. *Heraty*, 147 Mich. 473 (118 Am. St. Rep. 554). But when such an act would defeat or impair vested rights, it is violative of the due process clause of the State Constitution and of the Federal Constitution. Prior to the effective date of the prison reimbursement act Roman Olezniczak was in no way legally obligated to reimburse the State for his care and maintenance. The State had no such right of action against him. Instead he had the constitutional right to possess, use and dispose of his estate entirely free from any lien thereon or right therein by the State, as is now asserted. Following the enactment of the prison reimbursement statute there was no change of status or any act on the part of Roman Olezniczak in consequence of which he became obligated to reimburse the State or subject his estate to such a liability. To be sure he continued to be an involuntary prisoner of the State, but that gave the State no right to change his status as an involuntary ward of the State and to deprive him of his estate in whole or in part. Roman Olezniczak's status and his penalty or obligation to the State were fixed by the sentence imposed on him in 1921. The court which sentenced him could not at that time have lawfully

included in the sentence such a provision as is sought to be imposed under the prison reimbursement act. It seems quite conclusive that this present attempt to require Roman Olezniczak to pay as reimbursement to the State the cost of his maintenance for that period of his term of commitment subsequent to the enactment of the prison reimbursement act is in effect an attempt to apply the law retroactively to his rights and status as fixed by the sentence passed on him 14 years before the enactment of the prison reimbursement act. So construed and applied the act would be unconstitutional.

Incident to the above conclusion it may be noted that we find a distinct and controlling difference in the situation presented in *Auditor General* v. *Hall, supra,* and the instant case. When sentence was passed upon Hall the prison reimbursement act was a part of the law of the State; and in passing that act there was embodied in the law of this State a distinct change of public policy. Theretofore it had been the public policy that the State would support at its own expense all persons convicted of a felony during the term of commitment. This was changed by the enactment of the prison reimbursement statute and thereafter the definitely fixed public policy was to require reimbursement to the State within the provisions of the act for expense so incurred. A sentence thereafter imposed automatically carried with it the pertinent provisions of the prison reimbursement act. But as above noted, at the time sentence was imposed on Roman Olezniczak neither the prison reimbursement act nor any similar act was in effect in this jurisdiction. His status and obligation to the State were fixed when his sentence was imposed in 1921. These could not be changed to his detriment by an act of the legislature passed 14 years later. To hold

otherwise would be to give retroactive effect to the law and violate his constitutional rights. Such would be the result regardless of whether or not we consider the pertinent provision of the prison reimbursement act "as civil rather than criminal in character" as stated by Mr. Justice Butzel in *Auditor General* v. *Hall, supra.*

The cross appeal by the defendant guardian necessitates statement of additional facts. In 1932 and again in 1937 the auditor general, represented by the attorney general, petitioned the probate court of Ionia county for the payment of specified sums totalling $1,772.40 to reimburse the State for the maintenance of Roman Olezniczak who at those periods was an inmate of the Ionia State hospital for the criminal insane, he having been transferred to that institution from a branch of the State prison. Appropriate orders were made by the probate judge and in accordance therewith the State received the noted amount as reimbursement. In his cross bill the defendant guardian prays that an order be entered in these proceedings requiring the State to repay the money so received by it. This relief was denied by the circuit judge, and the defendant guardian has appealed.

In general the basis of the claim embodied in this cross appeal is indicated in the guardian's brief by the following:

"Defendant's ward (Roman Olezniczak) was not, however, a public patient in the sense intended by section 17 of the hospital act (Act No. 151, Pub. Acts 1923, as amended; Comp. Laws 1929, § 6878 *et seq.* [Stat. Ann. § 14.801 *et seq.*]), which provides for reimbursement to the State of Michigan from estates of mental incompetents confined to any of the State institutions covered by the act under the procedure set forth in section 11 of the hospital act."

In effect cross appellant's claim is that the probate court is one of statutory jurisdiction only, and that the Ionia probate court did not have jurisdiction of the subject matter at the time the 1932 and 1937 orders were granted, and therefore the orders were void, and the State of Michigan through the void proceedings obtained moneys from the ward's estate without lawful authority. In consequence thereof cross appellant contends that the circuit court in these proceedings should have ordered repayment by the State of the moneys so obtained.

In view of our having hereinbefore determined that the State cannot recover in the present proceedings, we are not confronted with what might have been the right of this cross appellant to use as a set-off *pro tanto* the moneys it seeks to recapture by its cross action as against any amount recovered by the State in the present proceedings. Instead, since we hold the State cannot recover in the instant case, the asserted right of cross appellant must be considered wholly independent of plaintiff's unsuccessful effort to recover. On this phase of the case the State in its sovereign capacity asserts immunity from liability in the instant proceedings. The law seems to be settled that by instituting the present proceedings in the circuit court of Bay county the State waived its right of immunity only to the extent of any set-off that might be successfully urged against its claim. *United States v. Shaw*, 309 U. S. 495 (60 Sup. Ct. 659, 84 L. Ed. 888). The circuit court of Bay county is without jurisdiction to render a judgment against the State in these proceedings. Instead the exclusive jurisdiction to render such a judgment is by the law of this State vested in the court of claims. Act No. 135, § 8, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 13862–8, Stat. Ann. 1940 Cum. Supp. § 27.3548

[8]). In part at least it was on the ground just above noted that the circuit judge denied relief to cross appellant. This holding was proper.

In view of our decision it is unnecessary to review other contentions embodied in the respective briefs; but it may be noted that, at least in part, the contentions made by the administrator of veterans' affairs have been considered. *In re Lewis' Estate,* 287 Mich. 179.

The judgment entered in the circuit court should be affirmed; but since neither party has sustained its position and also because a public question is involved, no costs will be allowed.

STARR, J., concurred with NORTH, J.

BUTZEL, J. I believe that the prison reimbursement act, Act No. 253, Pub. Acts 1935 (Comp. Laws Supp. 1940, §§ 17667–11—17667–16, Stat. Ann. §§ 28.1701–28.1708), as amended by Act No. 272, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 17667–17, Stat. Ann. 1941 Cum. Supp. § 28.1709), imposes a civil liability on all prisoners able to pay whether they were sentenced before or after the effective date of the act, but such liability does not extend to any period of imprisonment prior to the effective date of such act. We stated in the unanimous opinion of the court in *Auditor General* v. *Hall,* 300 Mich. 215, 221 (139 A. L. R. 1022):

"We regard the statutory obligation of a prisoner to pay for his keep and maintenance, if he has a sufficient estate, as civil rather than criminal in character."

We likened it to the obligation of the estate of an insane person to pay for his keep and maintenance. Prior to the enactment of the prison reimbursement act it was the policy of the State of Michigan to

furnish its prisoners such keep and maintenance gratuitously. That policy was changed upon the effective date of Act No. 253, Pub. Acts 1935. A prisoner sentenced before that date had no vested property or contract right to continue to be supported gratuitously even though he had an estate ample to pay for his future keep and maintenance after such date. No obligation was imposed retrospectively.

''A law is not retrospective, in a sense forbidding it, because a part of the requisites for its action and application is drawn from a time antedating its passage.'' *Clearwater Township* v. *Kalkaska Supervisors,* 187 Mich. 516, 521.

That the prison reimbursement act provides for a remedy purely civil in nature is borne out by the fact that whole passages in it are copied verbatim from the act providing reimbursement to the State for maintenance of insane persons confined to State hospitals. It has never been doubted that the latter statute is constitutional, yet, if the proceedings authorized thereunder were criminal in nature, a more flagrantly unconstitutional statute could hardly be imagined, since the visitation of a criminal penalty upon a person simply because he is insane would be a substantive denial of due process of law.

In their pleadings the guardian and the veterans' affairs administrator furnish a statement of the assets of Olezniczak in the guardian's hands. The five items total $3,327.93, and may be grouped as follows:

Group 1: United States Savings Bonds
　　　　(plus accrued interest unpaid)　$ 506.25
　　　　United States Treasury Bonds
　　　　(plus accrued interest unpaid)　1,000.00

Group 2: Cash on deposit in Ionia County
   National Bank      992.61
   Receiver's certificate, National
   Bank of Ionia, in receivership  29.07
Group 3: Adjusted Compensation (Veterans'
   bonus) Bonds (plus accrued
   interest unpaid)     800.00

Both parties agree that no exemption under the Federal statutes relating to veterans can be claimed for the items in Group 1, though they were purchased with funds received by the guardian from the veterans' administration, this question having been settled by *Carrier* v. *Bryant,* 306 U. S. 545 (59 Sup. Ct. 707, 83 L. Ed. 976). As to the deposits in Group 2, which also are derived from such funds, and as to the bonus bonds in Group 3, a claim of exemption is made both by defendant guardian and by the intervening defendant, the administrator of veterans' affairs. They rely upon 38 USCA, §§ 454a, 618 and 686c. These three sections are from three separate enactments: section 454a is from the world war veterans' act, 1924, as amended; section 618 from the world war adjusted compensation (bonus) act (1924), as amended; and section 686c from the adjusted compensation (bonus) payment act, 1936, as amended. The adjusted compensation bonds in Olezniczak's estate (Group 3) were issued under the authority of the last mentioned act; hence section 686c refers only to them. Section 454a refers to funds derived from the veterans' administration, and, if applicable, covers the items in Group 2, which are derived from pension and insurance payments from the veterans' administration. It is not clear that there are now any funds in Olezniczak's estate to which the exemption provided in section 618 would apply, since, presumably, all such funds were converted into adjusted compensation bonds under

the authority of the adjusted compensation payment act, 1936, and section 686c applies to such bonds. In effect, therefore, we are confronted with the two questions: (1) Does section 454a exempt deposits in banks accumulated from pension and insurance payments from the veterans' administration from the claim of the State of Michigan for reimbursement for maintenance furnished a prisoner in State's prison? and (2) Does section 686c exempt adjusted compensation (bonus) bonds of such prisoner from such claim?

Fortunately, the first question is already answered by our previous decision in *Re Lewis' Estate,* 287 Mich. 179, where we held that, notwithstanding section 454a, the State of Michigan could obtain reimbursement for the maintenance in State hospitals of Mary T. Lewis, a dependent, incompetent child of a United States military service veteran, from her estate, which consisted wholly of monthly pension payments received by her guardian from the veterans' administration. We held that, as the very purpose of a *pension* is to provide the beneficiary with support and maintenance, it could not have been the intent of congress to deny the State of Michigan reimbursement for furnishing such support. The *Lewis* decision has never been overruled by any decision of the United States supreme court, and we adhere to it now. So far as the deposits in bank are concerned, they are not exempt from a claim such as that before us, having been accumulated out of pension and insurance payments, the express purpose of which was to provide the beneficiary (in this case the veteran himself) with needed support. We are mindful that in *Lawrence v. Shaw,* 300 U. S. 245 (57 Sup. Ct. 443, 81 L. Ed. 623, 108 A. L. R. 1102), the Federal supreme court held such moneys exempt from taxation under section 454a, but we call attention to the fact that, in

that same case, the court explains the purpose of such pension payments in language which practically reiterates the principle upon which we rested our decision in the *Lewis Case*. Chief Justice Hughes writes:

"These payments are intended primarily for the maintenance and support of the veteran." *Lawrence* v. *Shaw, supra,* 250.

Though the exemption from taxation and the exemption from creditors' claims appear in the same sentence in section 454a, a decision that pension-derived funds are nontaxable does not mean that they are unavailable for the support of the veteran. Indeed, another way of expressing our *Lewis* decision would be to say that the State of Michigan is not a "creditor" within the congressional intendment.

The bonus laws, on the other hand, evince a donative intent, rather than an intent merely to support. The size of the bonus given each veteran is made to depend upon factors quite other than his need. The adjusted compensation bonds, therefore, do not come within the reason of the rule announced in the *Lewis Case,* and we refuse to extend that rule to them. We do not dwell upon the slight difference in wording of the exemption clause contained in section 454a and that in section 686c, but rather stress the difference of congressional purpose in enacting the entirely distinct statutes of which those sections are parts, respectively. The distinction between the two sections is well delineated in the recent excellent decision of the supreme court of Wisconsin in *Re Guardianship of Letourneau,* 238 Wis. 473 (300 N. W. 248). That case also reaches the conclusion that section 686c exempts bonus bonds from a claim on the part of the Wisconsin department of

public welfare for reimbursement for the institutionalization of an insane veteran.

Roman Olezniczak was sentenced to imprisonment for life February 4, 1921. On August 23, 1923, he was transferred from prison to the Ionia State hospital for the criminally insane, where he remained until April 18, 1924, a period of 7 months, 26 days. Then he was returned to prison. Later, on November 13, 1925, he was again transferred to Ionia, where he remained until January 15, 1938, a period of 12 years, 2 months, 2 days. During this second period of confinement at Ionia, the probate court for the county of Ionia, upon petition of the auditor general and after notice to Olezniczak's guardian, made two orders for reimbursement for Olezniczak's maintenance at Ionia, the first on February 13, 1932, and the second on February 18, 1937. The moneys so ordered to be paid were paid, and now Olezniczak's present guardian claims that the probate court was without jurisdiction to make such orders, and counterclaims in the present proceedings to recover such payments. The circuit court held that the statute of limitations (3 Comp. Laws 1929, § 13976 [Stat. Ann. § 27.605]) barred defendant's counterclaim insofar as it sought recovery of moneys paid under the 1932 order. This was correct.

The 1937 order commanded payment of reimbursement for Olezniczak's hospitalization at Ionia for the interval between the two orders. This five-year interval was part of Olezniczak's second period of hospitalization at Ionia, which commenced on November 13, 1925, when the prison authorities transferred him thither, acting under Act No. 151, § 56, Pub. Acts 1923 (2 Comp. Laws 1929, § 6932 [Stat. Ann. § 14.854]). That section, unlike its

predecessor, Act No. 124, § 27, Pub. Acts 1893 (1 Comp. Laws 1897, § 1980), as amended by Act No. 81, Pub. Acts 1899 (1 Comp. Laws 1915, § 1432), does *not* contain the sentence:

"The expenses of such insane convict's maintenance and clothing in said asylum shall be charged to the State of Michigan."

Indeed, section 17 of the 1923 act provides the procedure whereby persons admitted to State hospitals for treatment of the insane may, provided they have estates sufficient therefor, be compelled to reimburse the State for the expense of their maintenance. Act No. 151, § 17, Pub. Acts 1923 (2 Comp. Laws 1929, § 6894 [Stat. Ann. § 14.817]). Section 17 begins:

"When such mentally diseased person has been admitted to any of the State institutions named in this act, as a patient."

Section 1 of the act (2 Comp. Laws 1929, § 6878, as amended by Act No. 220, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 6878, Stat. Ann. § 14.801]) names the Ionia State hospital as follows:

"At Ionia, Michigan, a hospital for the humane, curative, scientific and economical treatment of insane persons who have committed or attempted to commit certain crimes as herein set forth, to be known as the Ionia State hospital."

It is not necessary to the existence of a right of reimbursement in favor of the State that an insane prisoner be transferred from prison by order of a probate court. Indeed, a probate court would have no jurisdiction to make such a transfer, since the subject of transfers from prison to the Ionia State hospital is already governed by section 56 of the 1923 act, which is exclusive. Section 17 of

the same act does not discriminate between transfers by the probate court of noncriminal insane persons from private homes to State institutions for the treatment of noncriminal insane persons, on the one hand, and transfers by the prison authorities of insane convicts from prison to the Ionia State hospital, on the other, nor does section 17 even intimate that while the State should have reimbursement in the former class of cases, it shall have none in the latter; on the contrary, section 17 scrupulously avoids all reference to the manner of admission, and simply provides:

"When such mentally diseased person has been admitted to *any* of the State institutions named in this act, as a patient." (Italics ours.)

The record and briefs inform us that the orders of the Ionia probate court of 1932 and 1937 were based on petitions by the auditor general in which Act No. 217, §§ 17, 19, Pub. Acts 1903 (1 Comp. Laws 1915, §§ 1326, 1328) were referred to as the statutory basis of the reimbursement proceedings. Obviously, Act No. 217, Pub. Acts 1903, could not have been the basis for such proceedings, it having been repealed in 1923 (Act No. 151, § 53, Pub. Acts 1923 [2 Comp. Laws 1929, § 6930 (Stat. Ann. § 14.852)]); yet, even if it had not been repealed, it still could not form the statutory basis of reimbursement proceedings for an insane convict transferred to Ionia, since its applicability is limited to the State institutions enumerated in section 2 (Act No. 217, Pub. Acts 1903 [1 Comp. Laws 1915, § 1311), among which Ionia is not named.

Nevertheless, inasmuch as there *was* a valid statute under which the probate court for the county of Ionia in 1932 and 1937 could act in awarding the State reimbursement, namely, Act No. 151, § 17,

Pub. Acts 1923 (2 Comp. Laws 1929, § 6894 [Stat. Ann. § 14.817]), we are not disposed to permit the legal error in the auditor general's petitions, however gross, to vitiate the jurisdiction of the court in those proceedings, especially in view of the fact that the attack upon such jurisdiction is, in the case at bar, collateral. Once judgment is rendered, merely formal defects in the pleadings, which do not affect the right or justice of the judgment, may be disregarded (3 Comp. Laws 1929, § 14148 [Stat. Ann. § 27.842]).

From the orders of the probate court no appeal was ever taken. They are, therefore, judgments, and within the protection from collateral attack, even on the ground that the court had no jurisdiction over the subject matter, which we held to be the status of all unappealed judgments in *Dodge* v. *Detroit Trust Co.*, 300 Mich. 575, 610–612.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. As a public question is involved, no costs will be awarded.

CHANDLER, C. J., and BOYLES, BUSHNELL, and SHARPE, JJ., concurred with BUTZEL, J. WIEST, J., took no part in this decision.