## Lulis Estate (No. 1)

Before Valentine, P. J., Aponick and Flannery, JJ.

*W.·F. Farrell,* for claimant.

*Joseph Mieszkowski,* for guardian.

VALENTINE, P. J., May 15, 1951.—This is an application by the Commonwealth of Pennsylvania, under the Act of April 25, 1929, P. L. 704, sec. 2, 71 PS §1784, through the Department of Public Assistance, for an order requiring the Miners National Bank of Wilkes-Barre, guardian of John A. Lulis, a weak-minded person, to pay the Commonwealth the sum of $1,429.90, representing expenses incurred for the support, maintenance and assistance of the incompetent.

The facts are uncontroverted and may be summarized as follows:

On August 8, 1946, John A. Lulis, as a former member of the United States armed services, was awarded permanent and totally disabling benefits by the Veterans Administration at the rate of $42 a month beginning August 8, 1946, and increasing to $52 a month on September 1, 1946; $60 a month on December 1, 1947, and finally to $72 a month on August 23, 1954. Because of the veteran's mental condition, payment of the awarded benefits was delayed until the appointment of respondent as guardian in November 1950, when accumulated benefits totaling $2,864.20 were paid in a lump sum to the guardian. These accumulated benefits, supplemented by current benefits, now constitute the sole asset of the incompetent's estate. After the award of the disability benefits to John Lulis, the Pennsylvania Department of Public Assistance, from October 1947 to January 13, 1951, expended $1,429.90 as public assistance for his maintenance and support.

The Act of June 24, 1937, P. L. 2045, sec. 4, as amended by the Act of June 9, 1939, P. L. 310, 62 PS §1974, provides:

"The real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred."

From August 8, 1946, when the incompetent was awarded disability benefits, and while the same were accumulating in the hands of the Veterans Administration, Lulis had the right of ownership in the disability benefit payments. This is conceded, or at least not controverted. However, the contention of counsel for the guardian, as set forth in his brief, is that the funds are exempt under section 3 of the Act of August 12, 1935, 49 Stat. at L. 609, 38 U. S. C. 454(a) from the claim of the Department of Public Assistance for the expense of support incurred by the Commonwealth for a period prior to the appointment of the guardian. The language of the section referred to is:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

The situation here presented is not one in which a creditor is attempting to utilize the fund representing the accumulated disability benefits for the payment of his debt, but is rather an effort by the Commonwealth to be reimbursed for care and maintenance of the incompetent. The particular section (38 U. S. C.

454($a$)) of the World War Veterans' Act has been construed as not prohibiting the reimbursement of a State for care and maintenance of an incompetent person.

Under the Act of August 12, 1935, 49 Stat. at L. 609, providing that payments of pensions shall be exempt from creditors' claims, the State was not barred from seeking reimbursement under statute for expenses of hospitalization of mentally incompetent ward whose estate represented accumulations of payments under that act, since, upon commitment for hospitalization, ward became a ward of the State, and the State was asking only the support the pension was intended to provide: In re Lewis' Estate, 287 Mich. 179, 283 N. W. 21.

In this case the court said:

"We are not here concerned with actions by creditors seeking to turn the pension to satisfaction of their demands, but only with the question of reimbursement of the State for care and maintenance. Certainly the pension protective law does not intend the fund for the welfare of the beneficiary and then, under restrictions thereof, after receipt by the beneficiary, prevent employment thereof for care and support of the pensioner. . . .

"The State, under humanitarian legislation, has assumed the care and maintenance of the insane pension beneficiary and, by statute, has provided means and measures for reimbursement and we do not think that, under such circumstances, Congress intended to consider the State in the class of barred creditors. The exemption in the pension law serves its purpose in holding that in the hands of the guardian and under order of the court, of which the beneficiary is a ward, the money is not exempt from employment in reimbursing the State, under statutory provisions, for the expense of care and maintenance of the ward."

In re Simpson, 61 N. Y. S. (2d) 529, it was held that the statutory liability for reasonable cost of incompetent veteran's maintenance at a State institution was enforcible against funds in possession of the committee, although such funds were received from the Federal Government under the Act of August 12, 1935, 49 Stat. at L. 609.

In Auditor General v. Olezniczak, 302 Mich. 336, 4 N. W. (2d) 679, it was held:

"Savings deposits in banks, accumulated from pension and insurance payments to veteran who was a prisoner, from Veterans' Administration, were not exempt from payment under the prison reimbursement act for maintenance of prisoner, under federal statute exempting benefits due under laws relating to veterans from claims of creditors in certain instances." (Syllabus.)

In Gaskins v. Security-First National Bank of Los Angeles et al., 30 Cal. App. (2d) 409, 86 P. (2d) 681, it is said:

"The statute exempting benefits due veterans from claims of creditors does not apply to debts or claims against an incompetent veteran for the care of his minor children." (Syllabus.)

The principle enunciated in the above authorities was recognized by this court in In re Miegocki, 34 Luz. 257.

Therefore, now, May 15, 1951, the rule of February 26, 1951, is made absolute, and it is directed that the Miners National Bank of Wilkes-Barre, guardian of the estate of John A. Lulis, pay to the Commonwealth of Pennsylvania the sum of $1,429.90, for expenses incurred for the past support, maintenance and care of John Lulis. It is further ordered that the guardian pay the costs of this proceeding.