MARION *v.* VAUGHN.

OPINION OF THE COURT.

1. SCHOOLS AND SCHOOL DISTRICTS—EMPLOYEES—CONTRIBUTIONS—
RETIREMENT FUND.

All public school employees in the State of Michigan must con-
tribute by way of payroll deductions to the Michigan public
school employees' retirement system; but if they leave public
school service before retirement, they are entitled to a refund
of their accumulated contributions (CLS 1961, §§ 38.221,
38.222).

2. SAME—EMPLOYEES—RETIREMENT FUND—GARNISHMENT—EXEMP-
TION.

Pensions, annuities, retirement allowances, or other benefits set
up by the statute creating the public school employees' retire-
ment system, and the various funds set up by the statute, are
exempt from garnishment (CLS 1961, § 38.225).

3. SAME — EMPLOYEES — RETIREMENT FUND — CONTRIBUTIONS —
GARNISHMENT.

Accumulated pension contributions in public school employees'
retirement system which are subject to return to a judgment
debtor by reason of his leaving the school system are part of
the "various funds" that are statutorily exempt from garnish-
ment (CLS 1961, § 38.225).

DISSENTING OPINION.

LEVIN, J.

4. SCHOOLS AND SCHOOL DISTRICTS—EMPLOYEES—RETIREMENT FUND
—EXEMPTION FROM GARNISHMENT—STATUTORY CONSTRUCTION.

*Exemption from garnishment in public school employees' retire-*
*ment system statute of "a pension, an annuity or retirement*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Schools § 114 *et seq.*
[2–5, 7–9] 6 Am Jur 2d, Attachment and Garnishment § 180 *et seq.*
[6] 50 Am Jur, Statutes § 249 *et seq.*

allowance, \* \* \* or any other benefits accrued or accruing" and of "the various funds created by this chapter" showed 2 separate concepts in the mind of the legislature, protection of the participant's interest, and protection of the interest of the system itself (CLS 1961, § 38.225).

5. SAME—EMPLOYEES—RETIREMENT FUND—EXEMPTION FROM GARNISHMENT—STATUTORY CONSTRUCTION.

Exemption from garnishment in public school employees' retirement system statute of "the various funds created by this chapter" should be construed so as to protect the interests of the system itself and not the interests of any one participant (CLS 1961, § 38.225).

6. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT—EJUSDEM GENERIS.

A useful aid at times in determining legislative intent is the principle that general words are to be limited to things ejusdem generis with matters covered by preceding specific words.

7. SCHOOLS AND SCHOOL DISTRICTS—EMPLOYEES—RETIREMENT FUND—EXEMPTION FROM GARNISHMENT—STATUTORY CONSTRUCTION.

A claim that statute exempts from garnishment contributions to the public school employees' retirement fund that are due and owing to the contributor because he has left the school system, should be considered in the light of the legislative purpose in passing the exemption statute, because the statute does not specifically exempt the obligation due to such an employee (CLS 1961, § 38.225).

8. SAME—EMPLOYEES—RETIREMENT FUND—EXEMPTION FROM GARNISHMENT—LEGISLATIVE PURPOSE.

The purpose behind the statutory exemption from garnishment of certain funds of the public school employees' retirement system was to protect participants, not ex-participants, and this purpose is not advanced by an interpretation which allows an ex-participant to escape his creditors (CLS 1961, § 38.225).

9. SAME—EMPLOYEES—RETIREMENT FUND—EXEMPTION FROM GARNISHMENT—LEGISLATIVE PURPOSE.

It was not the intention of the legislature to protect the money contributed by a judgment debtor to the public school employees' retirement fund from garnishment beyond the period of the debtor's membership in the plan, and therefore a lump sum payment due to the debtor when he resigned from the public school system should be subject to garnishment (CLS 1961, § 38.225).

Appeal from Wayne, Murphy (Thomas J.), J. Submitted Division 1 March 7, 1967, at Detroit. (Docket No. 2,290.)    Decided July 25, 1968.

Complaint by Buster Marion against Gerald B. Vaughn. Plaintiff proceeded by writ of garnishment against the Michigan Public School Employees Retirement Fund. The garnishee defendant denied that it had any nonexempt funds owned by defendant Vaughn, and moved for accelerated judgment. Motion granted. Plaintiff appeals. Affirmed.

*Elsman, Young & Rogalle,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene Krasicky* and *James J. Wood,* Assistant Attorneys General, for garnishee defendant.

J. H. GILLIS, J.    Plaintiff, Buster Marion, obtained a judgment against Gerald B. Vaughn, principal defendant, who was a public school employee in the State of Michigan and as such was a member of the Michigan public school employees retirement system. Mr. Vaughn made contributions to the system by way of payroll deductions. After leaving the public school service, Mr. Vaughn applied to the garnishee defendant for a return of his accumulated contributions. Thereafter, plaintiff secured a writ of garnishment against the garnishee defendant in an attempt to reach funds of the principal defendant. The garnishee defendant filed a disclosure denying that it had any assets belonging to the principal defendant "except funds and/or benefits exempt from garnishment by § 25 of Act 136, PA 1945, as amended, being CLS 1961, § 38.225 (Stat Ann 1968 Rev § 15.893[25])."

Plaintiff moved for trial of the statutory issue and the garnishee defendant moved for accelerated judgment. The court ruled that it had no jurisdiction over the property involved and granted accelerated judgment on June 8, 1966.

The sole issue for our determination is whether the accumulated contributions of the principal defendant are exempt from garnishment under this factual situation. Section 25 of the act provides:

"A pension, an annuity, or retirement allowance, any optional benefit, or any other benefits accrued or accruing to any person under the provisions of this chapter, the various funds created by this chapter, and all moneys and investments and income thereof, are hereby exempt from any state, county, municipal, or other local tax, and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law whatsoever; and the right of a member to a pension, an annuity, or retirement allowance, any optional benefit, or any other benefits accrued or accruing to any such member or beneficiary under the provisions of this chapter shall be unassignable except as in this chapter specifically provided."

Plaintiff contends that the portion of the act exempting "any other benefits accrued or accruing under the provisions of this chapter" does not cover accumulated contributions, urging that the accumulated contributions are not *benefits* since the member has made the contribution himself. However, in deciding this case we need not look this far in the act in order to arrive at our determination. This act specifically exempts "the various funds created by this chapter, and all moneys and investments and income thereof."

Section 12 of the act* provides:

"The funds hereby created are the annuity accumulation fund, annuity reserve fund, pension accumulation fund, expense fund and general fund."

The annuity accumulation fund is next defined in § 12 subd (a) as:

"* * * the fund in which shall be accumulated the contributions from the compensation of members for the purchase of annuities."

While we have quoted a sufficient portion of the act to support the lower court decision, perhaps we should point out that the purpose of the exemption clause would be defeated were we to hold otherwise. Any accumulated contributions would be subject to garnishment up to the date that the employee enters into retirement. The existence of the fund is a well recognized incentive to faithful discharge of duties during the period of active service. It is of great benefit to the employees to have their accumulated contributions protected both during their working years and those years thereafter when they are unable to perform service in their profession.

Affirmed. Costs to appellee.

LESINSKI, C. J., concurred with J. H. GILLIS, J.

LEVIN, J, (*dissenting*). In my opinion Section 25 of the public school employees retirement fund act[1] does not insulate from garnishment contribu-

---

* CL 1948, § 38.212 (Stat Ann 1968 Rev § 15.893[12]).

[1] "A pension, an annuity, or retirement allowance, any optional benefit, or any other benefits accrued or accruing to any person under the provisions of this chapter, the various funds created by this chapter, and all moneys and investments and income thereof, are hereby exempt from any state, county, municipal, or other local tax, and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law whatsoever; and the right of a member to a pension, an annuity, or re-

tions made by a public school employee to the retirement fund about to be refunded to him due to his resignation before becoming eligible for a retirement allowance.[2]

When the principal defendant, Vaughn, ceased to be a public school employee, the fund became indebted to him for an amount equal to "all of the accumulated contributions" made by him.[3]

The majority do not hold the amount of such indebtedness exempt as a *"benefit* accrued or accruing."[4] Rather they hold such amount is a part of the "various *funds*"[5] and for that reason exempt.[6] This, I think, misreads the statute.

---

tirement allowance, any optional benefit, or any other benefits accrued or accruing to any such member or beneficiary under the provisions of this chapter shall be unassignable except as in this chapter specifically provided."  CLS 1961, § 38.225 (Stat Ann 1968 Rev § 15.893[25]).

[2] "Should a member cease to be a public school employee before becoming eligible for a retirement allowance as provided in this chapter, he shall be paid, except as otherwise provided in this chapter, all of the accumulated contributions standing to his credit in the annuity accumulation fund, together with 75% of the contributions, without interest, made under the provisions of chapter 1 of Act No 184 of the Public Acts of 1937, as amended, or chapter 1 of Act No 56 of the Public Acts of 1941 and he shall forfeit any prior service and membership service credited to him upon payment of such refund."  CLS 1961, § 38.222 (Stat Ann 1968 Rev § 15.893[22]).

[3] See footnote 2.
[4] See footnote 1.
[5] See footnote 1.
[6] I have also considered whether the language in section 22 of the act (see footnote 2), stating the employee forfeits certain credits "upon payment of such refund," evidences a legislative intention to make the time of such payment the time when the participant's interest first becomes free of nonassignability and of the exemption from creditor action and protection from taxation.  If the quoted language and the exemption had been adopted at the same time, I might be persuaded they evidence such a legislative intention.  However, the language quoted above was added by P.A. 1951, No 207, while the exemption from creditor action (footnote 1) was already a part of the act.  It appears from an examination of the amending act that its purpose was to provide clearly for forfeiture of service credits when a participant leaves the retirement system and for reallowance thereof in the event an ex-participant again becomes a participant and repays his refunded contributions, and that the purpose of the amendment was not to clarify, amplify or otherwise affect the exemption provisions.

The items statutorily exempted from taxation and creditor action are

"a pension, an annuity or retirement allowance, any optional benefit, or any other benefits accrued or accruing to any person under the provisions of this chapter." [hereafter referred to as clause (i)], and

"the various funds created by this chapter, and all monies and investments and income thereof" [clause (ii)].

As I see it, the draftsman had two separate concepts in mind, the participant's interest and the interest of the retirement system itself. He sought to protect both from creditor action and taxation, but differentiated between the two. Clause (i) covers the participant's interest, clause (ii) covers the separate interest of the retirement system. This is the only reading which gives meaning to all the language used. The comprehensive interpretation of clause (ii) set forth in the majority opinion makes clause (i) altogether superfluous.

We start with the words used by the draftsman. The indebtedness here claimed to have been exempted is a sum equal to an ex-participant's "accumulated contributions." That does not sound at all like "a pension, an annuity or retirement allowance, any optional benefit, or any other benefits, accrued or accruing." It has been observed that "judges and lawyers can frequently do astonishing things with words."[7] In normal usage, one does not think of the return of money saved with a retirement system as a "benefit."

A useful aid sometimes invoked "in the judicial search for the sometimes elusive scrivener's intent"[8]

---

[7] *Park* v. *Employment Security Commission* (1959), 355 Mich 103, 116.

[8] *Mosby* v. *Wayne County Civil Service Commission* (1960), 360 Mich 186, 192.

is the principle that general words are to be limited
to things *ejusdem generis* with the matters covered
by preceding specific words. While not an absolute
principle, and, like all other aids to statutory con-
struction, one subordinate to the fundamental search
for an interpretation which will carry out the pur-
pose of the enactment, it is nonetheless an aid.[9]

The fund's indebtedness to Vaughn is not of the
nature of a pension, annuity or retirement allowance.
The indebtedness due Vaughn is a fixed amount pay-
able on demand in a lump sum because he will not
become a retiree. A pension, annuity or retirement
allowance is a comparatively smaller amount, pay-
able only after retirement over an indefinite period
of time.

The statute does not explicitly exempt the indebt-
edness which became payable to Vaughn upon his
resignation. Therefore, we should consider the
claim that the statute does exempt such indebted-
ness in the light of the legislative purpose.[10]

___

[9] *Mosby* v. *Wayne County Civil Service Commission, supra; People*
v. *Powell* (1937), 280 Mich 699, 704.

[10] Illustrating the consideration of legislative purpose in construing
an exemption, see *Auditor General* v. *Olezniczak* (1942), 302 Mich
336, where the questions presented were (1) whether a Federal stat-
utory provision exempted deposits in banks accumulated out of Vet-
erans' Administration pension and insurance payments from the claim
of the State of Michigan for reimbursement for maintenance fur-
nished a prisoner in State prison and (2) whether another statutory
provision exempted adjusted compensation bonus bonds of the prisoner
from such a claim. The Court stated (p 350): "We do not dwell
upon the slight difference in wording of the exemption clause [s of
the 2 separate Federal statutory provisions applicable to the (1)
pension and insurance payments and (2) adjusted compensation bonus
bonds] * * * , but rather stress the difference of congressional
purpose in enacting the entirely distinct statutes of which those sec-
tions are parts." The Court held (p 349) that since "the very
purpose of a *pension* is to provide the beneficiary with support and
maintenance, it could not have been the intent of congress to deny
the State of Michigan reimbursement for furnishing such support."
(Emphasis by the Court.) Contrariwise, since the adjusted compen-
sation bonus bonds were not paid for *purposes* of support and main-
tenance, they were held to be not subject to Michigan's claim for re-
imbursement for furnishing such support.

The objective is to secure the benefits due retired public school employees and other beneficiaries undiminished by exactions at the instance of unpaid creditors or the tax collector.[11]  Since benefits are in part made up of contributions by active service employees, those contributions must be regarded as statutorily exempt while the employee remains eligible for future benefits.  Any other interpretation would defeat the purpose of protecting retirement and other benefits.  The statutory language exempting retirement "benefits accrued or accruing" expressly articulates such legislative purpose.  While an employee remains a participant, retirement benefits, which in part are to be paid from amounts contributed by him, are accrued or accruing and are, accordingly, exempt in their entirety.

It will be noted (see footnote 1) that while the subject matter of each of clauses (i) and (ii) is exempted from both taxation and creditor action, the prohibition against assignment does not apply to clause (ii) covering the system's interest.  In holding that the participant's right to the return of his contributions depends for protection against creditor action on the "various funds" language, as to which there is no prohibition against assignment, the majority provide a basis for a contention that even while he is in active service the participant's right to the return of his contribution *is* assignable. Before retirement the right of return is so inextricably a part of the potential benefit that it should be deemed part of the *benefit accrued and accruing.* For that reason, and not because it is invested as part of the "various funds", it is neither subject to

[11] See *Wyrzykowski* v. *Budds* (1949), 324 Mich 731, holding that Hamtramck's city charter provision exempting from creditor action "monies owed" to retired employees and their families protected the pension until paid to the employee.

creditor action nor assignable during active service
or after retirement.

To allow Vaughn to avail himself of the language
exempting "various funds" has no more validity than
would an interpretation that trade creditors or em-
ployees of the retirement system are protected from
garnishment because they too look to the "various
funds * * * and all moneys and investments
and income thereof" for payment of the amounts
due them. When Vaughn ceased to be a partic-
ipant, when his sole right was to the return of a
fixed sum which was thereupon due and payable,
his position became no different than that of a trade
creditor or an employee of the retirement system.
His claim, like theirs, was assignable and subject
to garnishment.[12]

We should seek an interpretation consistent with,
but neither less nor more than, the policy behind
the exemption. That policy is to protect partic-
ipants and other beneficiaries, not ex-participants.
The policy of protecting those to whom, on retire-
ment, benefits may be a livelihood, without which
they might become a public charge, is not advanced
by an interpretation which allows an ex-participant
to escape his creditors. That interpretation does
not serve the policy underlying the exemption and
is inconsistent with the public policy favoring the
payment of one's debts. The reason for the exemp-
tion having ceased, the exemption should cease ab-
sent a contrary expression from the legislature.

When Vaughn ceased to be a public school em-
ployee, his accumulated contributions became a debt

---

[12] There is no general policy prohibiting garnishment proceedings
against the State or its instrumentalities. On the contrary, such pro-
ceedings may be commenced after the plaintiff's claim has been re-
duced to judgment. CLS 1961, § 600.4011 (Stat Ann 1962 Rev §
27A.4011). The attorney general does not assert that the exemption
provision now before us was intended to save the retirement system
from annoyance arising from garnishment proceedings in behalf of
judgment creditors of former public school employees.

owing to him, a chose in action. There is a considerable body of authority favoring the view that a *matured* debt is freely assignable even though a restriction literally provides otherwise, although the decisions do not uniformly reach that conclusion.

Thus in *Lowry* v. *Duluth* (1905), 94 Minn 95 (101 NW 1059), a city charter provision prohibiting assignment of contracts for public work was construed not to forbid an assignment of the money due thereunder after the contract had been performed by the contractor.[13] Provisions prohibiting assignment of rights under insurance policies have been held not to prevent assignment of the insured's claim against the insurer after the loss.[14] A like construction has been placed on a provision prohibiting assignment of wages.[15] Similarly, see 6 Am Jur 2d, Assignments, § 22, p 207, § 33, p 217; *Trubowitch* v. *Riverbank Canning Co.* (1947), 30 Cal 2d 335 (182 P2d 182); *Rosecrans* v. *William S. Lozier* (CA 8, 1944), 142 F2d 118, 124; *Detroit Greyhound Employees' Federal Credit Union* v. *Aetna Life Insurance Company* (1967), 7 Mich App 430, 438[16] (Leave to appeal granted, 379 Mich 786).

---

[13] For additional cases see Annotation, Validity and construction of legislation forbidding assignment of contract with state or municipality or of claim arising therefrom, 175 ALR 1119, 1124. Contrast *Welles* v. *Portugese-American Bank* (CA 9, 1914), 211 F 561, 565.

[14] *The Roger Williams Insurance Company* v. *Mark Carrington* (1880), 43 Mich 252, 254; Annotations: Claim under contract of property insurance as assignable after loss, 56 ALR 1391; Assignment by assured of policy of indemnity or liability insurance, or of rights thereunder, 122 ALR 144; *Comunale* v. *Traders and General Insurance Company* (1958), 50 Cal 2d 654 (328 P2d 198, 68 ALR2d 883).

[15] *State Street Furniture Company* v. *Armour & Company* (1931), 345 Ill 160 (177 NE 702, 76 ALR 1298, 1303).

[16] In a case factually like the one here, the creditors prevailed, but the opinion of the court does not discuss the restriction. *Hill* v. *Schaefer* (CA 5, 1955), 221 F2d 914. Section 12 of the rules and regulations of the Tennessee Valley Authority Retirement System provided that "no transfer, assignment, pledge, seizure, or other voluntary alienation or encumbrance of any pension, annuity, or *other benefit* provided hereunder will be permitted or recognized, and in the event

The question before us is somewhat analogous to the question that arises when it is asserted that a trust's spendthrift provision operates to prevent creditor action during the period between the time the principal becomes payable to the remainderman or holder of the reversionary interest and the time of actual payment to him. It has been said:

"Ordinarily the principal of a trust fund, the right and title to which has vested in the beneficiary and which has become payable to him, is subject to attachment by his creditors, and that it is only when the donor or testator who created the trust has by clear language expressed the intention that the immunity from attachment or alienation is to continue until actual payment of the principal to the beneficiary that such protection in transit will be accorded legal support." *Sproul-Bolton* v. *Sproul-Bolton* (1955), 383 Pa 85, 93 (117 A2d 688, 692)[17]

It appears that no inference concerning such intention arises merely because the grantor provides spendthrift protection for the income of the trust. *In re Hall's Estate* (1915), 248 Pa 218 (93 A 944).

There can be no doubt that the legislature has power to exempt from creditor action the right of the employee to the return of his contribution and to protect the amount to be returned from creditor action during its transmission to him. From an examination of the various retirement acts it is apparent the legislature sometimes granted broad

of any such attempted alienation or encumbrance (including specifically, but without limitation, any attempted attachment, levy, execution, garnishment or other legal process affecting such pension, annuity, or other benefit), the Board may" forfeit or apply the same for the use of the employee's dependents. (Emphasis supplied.) In *Hill,* the effective date of a bankrupt's resignation from the service preceded his bankruptcy by a few days. The court held the bankrupt's trustee was entitled to the amount payable to the bankrupt in return of his accumulated contributions to the TVA retirement system, which amount had not been paid prior to bankruptcy. Compare *Tennessee Valley Authority* v. *Kinzer* (CA 6, 1944) 142 F2d 833.

[17] See Annotation: Protection of principal in transmission to beneficiary of income of spendthrift trust (Annotation, 2 ALR 858).

protection,[18] at other times more limited protection,[19] and at still other times no protection at all from creditor action and taxation.[20]

The attorney general relies on the language of those retirement acts providing protection in broader terms than the act here as evidence of a legislative purpose to protect the right of former public school employees to the return of accumulated contributions until the amount of such contributions is actually paid to them. However, one could just as well argue that these other statutory provisions, in expressly exempting from creditor action "the right * * * to the return of contributions" and "any other right" (see footnote 18), evidence a legislative distinction between "rights" and "benefits."

---

[18] The *exemption clause in the State Employees' Retirement System Act*, CL 1948, § 38.40 (Stat Ann 1961 Rev § 3.981[40]), reads much like the exemption clause in the act before us except that instead of speaking of *"any other benefits"* (see footnote 1) it uses the words *"any other right."* The Firemen and Police Department Pension and Retirement Act, CL 1948, § 38.559 (Stat Ann 1958 Rev § 5.3375[9]) exempts and makes non-assignable *"the right * * * to the return of contributions"* and *"any other right."* Similarly, see the Judges' Retirement System Act, CLS 1961, § 38.826 (Stat Ann 1962 Rev § 27.125[26]), and the Probate Judges' Retirement System Act, CLS 1961, § 38.927 (Stat Ann 1962 Rev § 27.3178[60.27]). The Legislative Retirement System Act, CLS 1961, § 38.1057 (Stat Ann 1961 Rev § 2.169[57]) exempts and makes nonassignable retirement allowances and other benefits and *"all accumulated credits of participants."*

[19] One of the early acts, State Police Pension, Accident and Disability Fund, CL 1948, § 28.110 (Stat Ann 1961 Rev § 3.340), exempts a "pension." Although pensions alone are exempt, Michigan state policemen are required to make contributions, which are 100% refundable upon resignation or dismissal for reasons other than breach of the public trust. CL 1948, § 28.103, as amended by PA 1965, No 165, (Stat Ann 1961 Rev § 3.333). The Firemen and Police Department Pension and Retirement Act and the State Police Pension, Accident and Disability Fund Act contain no exemption from taxation of either the participant's or system's interests.

[20] Section 10a of the general highway law, CL 1948, § 224.10a (Stat Ann 1958 Rev § 9.110[1]), authorizes boards of county road commissioners to purchase or participate in the cost of endowment policies or retirement annuities for employees and provides for return of participant's contributions upon early termination of employment, but does not contain an exemption provision. See, also, section 12a of the Board of Supervisors' Act, CL 1948, § 46.12a (Stat Ann 1958 Rev § 5.333[1]).

Be that as it may, each retirement act is complete in itself. Each contains provisions inconsistent with provisions of other acts. The several acts cannot be put together and treated as one act as if they were *in pari materia*. The language of these other acts cannot control or even guide our interpretation of the act now before us.[21] Even if the act before us, like the acts to which the attorney general refers, protected "rights" as well as "benefits," there would still remain the fundamental question whether the intention was to protect this corpus past the date the employee retains membership in the plan or fund and until actual transmission to him.

There is a clear distinction between retirement benefits, payable in installments, and lump-sum payments of accumulated contributions. The former represent basic living expenses to many a retiree and the purpose to provide complete spendthrift protection of such payments is clear.[22]

---

[21] *Ryan* v. *Michigan State Prison for Southern Michigan* (1963), 369 Mich 399.

[22] There is authority in other States for the view that pension and other payments designed to provide for the support of injured or superannuated persons or their families retain their character as exempt property after payment while held uninvested for that purpose. See Annotation: Deposit of Exempt Funds as Affecting Debtor's Exemption, 67 ALR 1203; see, also, 31 Am Jur 2d, Exemptions, § 97; 35 CJS, Exemptions, § 41, p 68, § 43, pp 71–78; § 50, p 103, § 51, p 103, § 58, p 114, *et seq.* Those holdings seem consistent with the purpose sought to be achieved in granting exemption for funds designed to provide such support. In contrast, the contributions to be returned to Vaughn are not paid so as to provide means for his support or that of his family; rather, they are paid to return his own money to him. The scope of the exemption cannot properly be delineated without regard to the purpose sought to be achieved in granting the exemption. See *Auditor General* v. *Olezniczak, supra,* discussed in footnote 10. While it would clearly be beyond the purpose of the exemption established in the public school employees' retirement fund act to treat as exempt lump-sum returned accumulated contributions after their deposit in a bank, it might well be thought within that purpose to treat as exempt periodic payments by the fund to pensioners and their families while held on deposit in a bank for their support prior to any investment on their part in nonexempt property.

If the legislature desired to provide for accumulated contributions the kind of enforced husbandry and supervision it furnishes in respect to retirement benefits, it would not require a lump-sum payment. Amounts so paid can be gone, and not infrequently are gone, within a fortnight.

In evaluating the matter, the cases which treat a matured debt as freely assignable, without regard to comprehensive restrictions on assignment, are relevant. Since the statutory exemption does not explicitly provide protection during transmission and since nonprotection does not work against the purpose behind the exemption and is entirely consistent with both that purpose and the policy favoring payment of debts, I conclude that the legislature did not intend to provide such protection for accumulated contributions due one who has left the service and who will not become a retired employee.

I would reverse.

---

For the Michigan law as to the duration of the exemption compare *Cullen* v. *Harris* (1896), 111 Mich 20, with *Recor* v. *Commercial & Savings Bank of St. Clair* (1905), 142 Mich 479.