AUDITOR GENERAL *v.* HALL.

CONVICTS—REIMBURSEMENT FOR KEEP AND MAINTENANCE—CONSTRUCTION OF STATUTES.

Section of prison reimbursement act that amount of reimbursement should be so much or such part thereof as may appear to be proper for reimbursing the State for the cost of keeping and maintaining the prisoner provided an amount subject to mathematical computation (Act No. 253, § 4, Pub. Acts 1935).

2. SAME—CONSTRUCTION OF STATUTES—PER CAPITA COST OF MAINTENANCE.

Clause of prison reimbursement act setting forth that reimbursement shall not be in excess of the per capita cost of maintaining prisoners does not involve any discretion but provides a rule for computation of amount of reimbursement (Act No. 253, § 4, Pub. Acts 1935).

3. CONSTITUTIONAL LAW—PRISON REIMBURSEMENT ACT—COURTS—LEGISLATURE.

In determining whether or not prison reimbursement act is constitutional it is not within the province of a court to discuss the wisdom of an act or its effect on the morale of the prisoners and their rehabilitation, such questions being solely for the legislature (Act No. 253, Pub. Acts 1935).

4. CONVICTS—REIMBURSEMENT ACT—EFFECT.

The prison reimbursement act imposes upon a defendant's estate, if he has any at the time of his conviction or acquires any during the term of his imprisonment, the obligation for his keep and maintenance (Act No. 253, Pub. Acts 1935).

5. SAME—REIMBURSEMENT FOR KEEP AND MAINTENANCE A CIVIL OBLIGATION—PROCEEDING IN REM—DOUBLE JEOPARDY.

The statutory obligation of a prisoner to pay for his keep and maintenance, if he has a sufficient estate, is civil in character, as the law does not impose a personal judgment or liability against the prisoner but provides for establishing a lien upon his estate by an ancillary proceeding *in rem,* but, even if regarded as criminal in character, does not constitute double jeopardy as to convictions occurring after enactment of statute (Act No. 253, Pub. Acts 1935).

Conferring things or services on person without person's consent, see Restatement, Restitution, § 116.

6. STATE—REIMBURSEMENT FOR KEEP AND MAINTENANCE OF FELONS.
   Since felons, as well as insane persons, require institutionalization for their own benefit as well as that of the public at
       large, the State is as entitled to reimbursement for the cost
       of keep and maintenance for the felon as for the insane person
       (2 Comp. Laws 1929, § 6894; Act No. 253, Pub. Acts 1935).

7. CONSTITUTIONAL LAW—PRISON REIMBURSEMENT ACT—EQUAL
   PROTECTION.
       Prison reimbursement act requiring reimbursement for keep and
           maintenance of a prisoner if he has an estate from which it
           may be obtained and setting an upper limit of the per capita
           cost does not violate the equal protection clause of the Federal
           Constitution as it applies to all prisoners equally within a
           certain class (U. S. Const. Am. 14; Act No. 253, Pub. Acts
           1935).

8. SAME—DUE PROCESS—DISCRETION OF COURT.
       As long as there is not an abuse of discretion and a judge remains within the limits of the law in imposing liability upon a
           prisoner's estate for his keep and maintenance while imprisoned, there is due process (U. S. Const. Am. 14; Act No.
           253, Pub. Acts 1935).

9. SAME—DELEGATION OF POWERS.
       The power to make a law, necessarily involving a discretion
           as to what it shall be, is not a delegable power, while the
           authority or discretion as to its execution, to be exercised
           under and in pursuance of the law, is delegable.

10. SAME—CLASSIFICATION.
       The fact that a judge is given reasonable discretionary powers
           and must take into consideration the legal and moral obligations of the prisoner, in imposing liability upon a prisoner's
           estate for his keep and maintenance while imprisoned, does
           not render the classification of prisoners between those who
           have an estate and those who do not have one unreasonable
           (U. S. Const. Am. 14; Act No. 253, Pub. Acts 1935).

11. COSTS—PUBLIC QUESTION—CONSTITUTIONALITY OF PRISON REIM
    BURSEMENT ACT.
       No costs are allowed in action involving determination of constitutionality of the prison reimbursement act, a public question being involved (Act No. 253, Pub. Acts 1935).

Appeal from Oceana; Pugsley (Earl C.), J. Submitted October 22, 1941. (Docket No. 72, Calendar No. 41,779.) Decided January 5, 1942.

Petition of Vernon J. Brown, Auditor General, against Alfred Hall to subject the estate of defendant to the payment of his expense to the State as a prisoner. Judgment for defendant. Plaintiff appeals. Reversed.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Charles R. MacLean, Daniel J. O'Hara,* and *Thomas J. Rushton,* Assistants Attorney General, for plaintiff.

*Brake & Miel,* for defendant.

BUTZEL, J. The auditor general appeals from a judgment in favor of defendant Hall. The case involves the constitutionality of Act No. 253, Pub. Acts 1935, as amended by Act No. 272, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 17667–11 *et seq.,* Stat. Ann. §§ 28.1701–28.1709). The act provides (section 1) that it may be known and cited as the prison reimbursement act. On March 23, 1937, defendant was convicted of the crime of statutory rape and sentenced for a term of from 5 to 10 years in the State prison for southern Michigan. After being kept there for a short period at a cost to the State of $47.53, he was removed to the Michigan reformatory at Ionia, where he remained three years at a further cost to the State of $1,107.49. He was a prisoner at the Michigan reformatory at the time of the hearing in the circuit court for the county of Oceana, where a petition had been filed by plaintiff in accordance with the prison reimbursement act to recover the sum of $1,105.02, the exact cost of keeping and maintaining defendant as a prisoner. At

·the time of the hearing he was possessed of a personal estate consisting of $5,400 in liquid assets, $1,500 in bondholders' certificates in defaulted bonds, and an $800 mortgage which was in default. Defendant testified that he intended to support his aged grandmother, but there is no testimony that he had ever supported her in the past. She was a public charge at a State sanatorium. Defendant was paroled to Kent county on October 10, 1940, and now resides there. The circuit judge held the act unconstitutional and the auditor general appeals.

Defendant assailed the act in the circuit court on numerous grounds., He claimed that under section 4, it was discretionary with the court to decide whether the prisoner had an estate which, in the language of the act, "ought to be subjected to the claim of the State." The court held that there was no merit to this contention because the determining fact was whether the prisoner had any estate over his legal exemptions. The court further found no merit in the objection that it was left to the court to determine the amount to be exacted. Section 4 provides that the amount shall be "so much or such part thereof as may appear to be proper for reimbursing the State." This is subject to mathematical computation. It was shown that the cost of a prisoner's keep varied from $1.03 to $1.118 a day. The court further properly held that the provision in the law that reimbursement shall not be in excess of the per capita cost of maintaining prisoners does not involve any discretion but provides a rule for computation. The court overruled the objection that the provisions imposing liability against the prisoner's estate, "regard being had to claims of persons having a moral and legal right to maintenance out of the estate of such prisoner," gave

too much leeway to the discretion of the court. The court held that the prisoner could not complain if a humane disposition was made in each case, it not being within the province of the prisoner to espouse the rights of others. The court further. held that the clause in the 1937 amendment to the act, exempting from seizure all accumulated earnings of prisoners still in prison, in no way impaired defendant's rights as it exempted the earnings of all prisoners from being applied toward payment of the cost of their keep.

The court, however, held the act unconstitutional because it does not require that in the original sentence of the prisoner the court must impose upon the prisoner's estate the obligation to pay the cost of his keep and maintenance; that, therefore, the instant proceeding brought after conviction and during the prison term of defendant, in accordance with the statute, resulted in placing the prisoner in double jeopardy by exacting two penalties for the same offense. The court further expressed a doubt whether the act was not discriminatory in that it exacted the cost of a prisoner's keep only from those who possessed property and then for an amount uncertain because it left the determination thereof to the court after giving "regard   *   *   * to claims of persons having a moral and legal right to maintenance out of the estate of such prisoner."

We limit our discussion to the questions raised by counsel: Does the act violate the constitutional privilege against double jeopardy as expressed in article 2, § 14, of the Michigan State Constitution (1908)? Does the act contravene the equal protection guaranty in section 1 of the Fourteenth Amendment to the Federal Constitution by creating an unreasonable classification in imposing an exaction upon one who has an estate which is not

imposed upon one who has no estate even though the criminal classification of the two is exactly the same?

The act had been on the statute books for almost two years prior to defendant's conviction. Defendant was given the benefit of the 1937 amendment which in no way affects the general terms of the act. The attorney general calls attention to the fact that the legislature was largely motivated by the fact that there is no legal, moral or economic reason why prisoners who are owners of substantial estates or become such while in prison should not be obligated to pay for their keep. It is not our province to discuss the wisdom of the act, its effect on the morale of the prisoners and their rehabilitation, or other questions that might be raised. These are questions solely for the legislature, which, after considerable debate, passed the bill.

Our attention is called to conditions in England prior to the adoption of our State Constitution, where prisoners were called upon to pay for their keep in many instances. Our attention, however, has not been called to any exactly similar statute in this country. In Tennessee, the warden is empowered to take charge of the property possessed by a prisoner and hold the same subject to the payment of "expenses of keeping the convict, if any, over and above the value of his work." Tenn. Pub. Acts 1829, chap. 38, § 17; Tenn. Code (1934), §§ 12088–12092. North Carolina has a statute somewhat similar to the Tennessee act: N. C. Pub. Acts 1795, chap. 433, § 7; N. C. Code (1935), § 1347. We also find that some States appropriate the earnings of the prisoners for their support. In *People* v. *Hawkins*, 157 N. Y. 1, 10, 11 (51 N. E. 257, 68 Am. St. Rep. 736, 42 L. R. A. 490), the court stated in *dictum* that there was no statutory reason, legal, moral or economic, why a person confined in prison should not be per-

mitted or compelled to earn his living instead of becoming a burden on the public to the detriment of his health and morals. The act at the time of defendant's conviction, however, imposed only upon his estate, if he had any at that time, or acquired any during the term of his imprisonment, the obligation to pay for his keep.

If we adopt the judge's view that the act is penal, some analogy may be found in the very large number of decisions which hold that no double jeopardy is created when, after conviction and sentence for a felony, the accused is tried again in a second proceeding to determine whether he is a second, third or fourth offender and, upon conviction, the sentence in the main case is vacated and a more severe one is pronounced. 3 Comp. Laws 1929, § 17341 (Stat. Ann. § 28.1085). The courts are in unanimity that under those circumstances there is no double jeopardy. See cases collated in 58 A. L. R. 23, 82 A. L. R. 348, 116 A. L. R. 212 and 132 A. L. R. 93. The analogy goes only to the extent indicated that one convicted of a felony may after, and because of, that conviction be subjected to another trial as a second, third or fourth offender, in accordance with statutory provisions.

We regard the statutory obligation of a prisoner to pay for his keep and maintenance, if he has a sufficient estate, as civil rather than criminal in character. The law does not impose a personal judgment or liability against the prisoner, but provides for establishing a lien upon his estate by an ancillary proceeding *in rem.*

Answering defendant's further objection, based on the Fourteenth Amendment, a close analogy may be found in the right of the State to collect cost of maintenance from the estates of insane persons who are institutionalized at public expense. The law in regard to insane persons is even more drastic in

that it imposes, in addition to the *in rem* liability imposed upon the estates of such insane persons as have estates, an *in personam* liability upon their relatives to pay for their keep. The moral difference between an insane person and a felon is manifest, but, from a sociological point of view, their similarities are more pronounced than their dissimilarities. An insane person is mentally sick, while a felon is frequently termed socially sick, antisocial. Both require institutionalization for their own benefit as well as that of the public at large. A modern prison requires the full-time services of at least one psychiatrist. A convict is sent to prison not only for punishment and determent, but also for reformation and rehabilitation (Act No. 255, chap. 4, § 7, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 17543-67, Stat. Ann. 1941 Cum. Supp. § 28.2127]). He has made it necessary for the State to keep and maintain him at a large cost. Many provisions in the prison reimbursement act seem to have been adopted verbatim from the act providing for recovery of expenses from the estates of insane persons. 2 Comp. Laws 1929, § 6894 (Stat. Ann. § 14.817). The latter act provides for recovery of so much of the expenses, both past and future, from the estate of the insane person, "as may to the court appear to be just and equitable, regard being had to the claims of persons having a moral or legal right to maintenance out of the estate of such mentally diseased person." The statute relative to the recovery of the expenses of maintenance from the estates of insane persons has been upheld by this court. In *Re Lewis' Estate,* 287 Mich. 179, 185, Mr. Chief Justice WIEST, speaking for the court, thus disposed of a constitutional attack on the latter statute:

"Counsel for defendant stress the point that the statute does not fix the rate of reimbursement.

"It is not necessary that the statute fix the rate. The reimbursement must be reasonable in amount, and, in this instance, it is conceded that the amount claimed is reasonable."

The prison reimbursement act is even less open to criticism on this score, for it contains a limitation of liability which the statute held constitutional in the *Lewis' Estate Case* does not.

"Reimbursement shall not be in excess of the per capita cost of maintaining prisoners in the institution in which said prisoner is an inmate." (Act No. 253, § 4, Pub. Acts 1935 [Comp. Laws Supp. 1940, § 17667–14, Stat. Ann. § 28.1704].)

In *Estate of Yturburru,* 134 Cal. 567 (66 Pac. 729), the court said:

"It is as necessary to have institutions for the restraint of the insane, whether they be rich or poor, as it is to have prisons and almshouses; and these institutions for the insane are charitable only so far as the legislature makes them so. There is nothing in the Constitution inhibiting laws extending charity to people in need of it; but it is not necessary to extend charity to those who are able to support themselves; indeed, it would be unreasonable to do so.

"A law in effect requiring that patients at the hospitals for the insane shall be there supported out of their own estates is wise and reasonable, and does not come within any inhibition of the Constitution against class legislation. The law, on the contrary, is general in its application, and recognizes no classification except such as in the very nature of things necessarily exists, and cannot be disregarded. * * * The distinction between the helpless and those able to help themselves is a natural one, and, so far as we are informed, pervades the laws of all civilized countries."

To like effect, see *Bon Homme County* v. *Berndt,* 15 S. D. 494 (90 N. W. 147); *In re Idleman's Commitment,* 146 Ore. 13 (27 Pac. [2d] 305); *State* v. *Troxler,* 202 Ind. 268 (173 N. E. 321); *State, ex rel. Macey,* v. *Johnson,* 50 Idaho, 363 (296 Pac. 588).

In far more traditional forms of action both criminal and civil, length of sentences and the amount of damages may vary materially before different judges and juries. As long as there is not an abuse of discretion and a judge remains within the limits of the law, we find there is due process. In *Re Brewster Street Housing Site,* 291 Mich. 313, 340, we approved of the following citation from *Cincinnati, W. & Z. R. Co.* v. *Commissioners of Clinton County,* 1 Ohio St. 77, 88, 89:

"The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

The law applies to all prisoners equally in a certain class. The fact that the judge is given reasonable discretionary powers, by directing him to take into consideration the legal and moral obligations of the prisoner, does not vitiate the law. No iron-clad rule can be laid down as to what each prisoner's legal and moral obligations may be. Courts are given wide discretionary powers in awarding alimony. One person may recover a large amount in an action brought on a tort, another person similarly injured at the same time may not recover at all before a jury on account of the same tort. One person may receive a very severe sentence for a crime, while another person may receive a very

light sentence for a similar offense. One person may be sentenced to a term or a fine, which he has the ability to pay and does pay, and another person similarly sentenced may not be able to pay the fine and be compelled to serve the term. All persons who have an estate are subject to the act. The amount of the liability can be definitely determined. The provision that the court is empowered to take into consideration the moral and legal obligations of the prisoner applies to all persons with estates. An abuse of discretion by a trial judge may be reviewed. We find no unreasonable classification.

The judgment of the trial court is reversed and the case is remanded to the trial court to enter judgment. The question being a public one, no costs will be allowed.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.