STATE TREASURER v SCHUSTER

Docket No. 105686. Argued October 9, 1997 (Calendar No. 18). Decided January 21, 1998.

The State Treasurer brought an action in the Ingham Circuit Court against Jon N. and Jane C. Schuster, under the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq.*; MSA 28.1701 *et seq.*, seeking ninety percent of Jon Schuster's deposited pension under the Public School Employees Retirement Act, MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.*, to reimburse the state for the cost of incarcerating him in a state correctional facility. The court, Thomas L. Brown, J., held that the pension was an "asset" subject to the reimbursement act's reimbursement scheme and could be considered in evaluating his ability to reimburse the state even though it was his only asset. The court further found that the state could attach pension payments after they were paid to him, and ordered him to pay fifty percent of his pension monies, rather than the ninety percent sought, because of his legal and moral obligations to his wife and dependents. The Court of Appeals, M. J. KELLY, P.J., and REILLY and E. SOSNICK, JJ., reversed, holding that the nonassignment provisions of the pension act had priority over the reimbursement act, and that the pension funds continued to be shielded from creditors even after payments were made to the fund beneficiary, his wife (Docket No. 168057). The State Treasurer appeals.

In an opinion by Justice WEAVER, joined by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, and TAYLOR, the Supreme Court *held*:

The State Correctional Facility Reimbursement Act's reimbursement provision has priority over the Public School Employees Retirement Act's nonassignment provision. The nonassignment provision does not insulate a public school employee's pension from the reimbursement provision.

The State Correctional Facility Reimbursement Act specifically, and without exception as to source, includes pension payments in its definition of assets, and, therefore, subjects all pension payments to the reimbursement scheme. The Legislature intended to shift the burden of incarceration expenses to prisoners and from taxpayers whenever possible. The nonassignment provisions of the Public School Employees Retirement Act were designed to insulate

retirement benefits from creditors. The state is not a creditor, however, nor is the relationship between a prisoner and the state a typical debtor-creditor relationship. Rather a prisoner is an obligor because of his statutory, not voluntary or personal, obligation to reimburse the state under the reimbursement act for incarceration expenses. Because of the unique relationship between prisoner and state as obligor and obligee, a reimbursement action is not clearly the type of "other legal process" from which the pension act shields pension payments.

Reversed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the Public School Employees Retirement Act precludes the state from attaching the defendant's retirement allowance payments.

The pension act is the more specific statute and is controlling. The clear language of the statute protects retirement allowance benefits from execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law, such as reimbursement under the reimbursement act. The provision is clear and unambiguous and was intended to be all-encompassing. Moreover, where two statutes conflict and one protects private property, the statute giving the protection should be given priority. Any doubt is to be resolved in favor of the property owner. Thus, the state is not entitled to directly attach the defendant's retirement allowance.

Because the pension act protects payments to retirees, it also must be interpreted to protect the payments immediately upon receipt by the retiree. Allowing the state to reach the payments after receipt would run counter to the purpose of the statute to protect such payments from process. Under the facts of this case, the pension act protects the payments after they are received by the defendant.

215 Mich App 347; 547 NW2d 332 (1996) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *E. David Brockman* and *Daniel M. Levy*, Assistant Attorneys General, for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Lawrence G. Campbell* and *Robert W. Powell*) and *Karen Bush Schneider* for the defendants.

Amicus Curiae:

*White, Przybylowicz, Schneider & Baird, P.C.* (by *Karen Bush Schneider*), for Michigan Education Association.

WEAVER, J. Appellant State Treasurer presents two questions of first impression for this Court. First, whether the Public School Employees Retirement Act, MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.*, nonassignment provision, which protects a public employee's pension from legal process, has priority over the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq.*; MSA 28.1701 *et seq.*, reimbursement provision that specifically includes "pension benefits" as "assets" that may be subject to a prisoner's statutory obligation to reimburse the state for his incarceration costs.[1]

The Court of Appeals found that the pension act's nonassignment provision prevailed over the reimbursement act's reimbursement provision and that the pension funds at issue were insulated from creditors even after dispensation to the fund recipient.

We reverse the Court of Appeals and hold that the reimbursement act has priority over the pension act in that the nonassignment provision does not insulate a public school employee's pension from the reimbursement provision.

---

[1] Given our conclusion that the reimbursement act prevails over the pension act, we do not find it necessary to address the second issue raised on appeal regarding whether the nonassignment provision protects pension funds even after such funds are paid to the pension fund recipient or beneficiary. Our decision not to address this second issue should not imply our approval of the Court of Appeals holding or analysis regarding protection of disbursements after receipt.

I

On April 10, 1991, codefendant Jon Schuster was sentenced to two and one-half to fifteen years in prison, following his February 14, 1991, conviction of criminal sexual conduct.[2] Plaintiff brought this action under the State Correctional Facility Reimbursement Act, seeking reimbursement for the costs of incarcerating Schuster in a state correctional facility. Those costs totaled approximately $22,000 for the first sixteen months of incarceration, and would continue to accrue during the remainder of Schuster's incarceration.

The state claimed the only potential source of reimbursement, or "asset" as defined by the reimbursement act,[3] was Schuster's retirement allowance. Schuster was receiving in excess of $2,000 a month from his pension. The monthly pension checks were sent to Schuster's home address and were deposited in a bank account that was held jointly by Schuster and his wife under a power of attorney arrangement.

Pursuant to the reimbursement act, the state sought to obtain ninety percent of the deposited pension.[4] Schuster attacked the legality of the state's action, claiming that the pension funds in question were entirely protected from collection by legal process under the nonassignment provision of the pension act.

The circuit court judge held that Schuster's pension was an asset subject to the reimbursement scheme and could, therefore, be considered in evaluating

---

[2] MCL 750.520b; MSA 28.788(2).

[3] MCL 800.401a; MSA 28.1701(1).

[4] MCL 800.403;   MSA 28.1703.

Schuster's ability to reimburse the state for the costs of his incarceration, even though Schuster's pension was, in fact, his only asset. The circuit court further found that the state could attach these pension payments after they were paid to Schuster. Upon motion, the circuit court conducted two days of hearings[5] regarding Schuster's "assets" and his legal and moral obligations to his wife and dependents. On April 23, 1993, the judge ordered Schuster to pay fifty percent, rather than the petitioned ninety percent, of his pension monies, or $1,000 a month, to the state pursuant to the reimbursement act.[6] The court entered a final order to that effect on August 11, 1993, and later denied defendants' motion for reconsideration.

The Court of Appeals reversed the circuit court's order and opinion, and held that the nonassignment provisions of the pension act had priority over the reimbursement act. The Court of Appeals further held that the pension funds continued to be shielded from creditors even after payments were made to the fund beneficiary, in this case Schuster's wife.

---

[5] MCL 800.404(5); MSA 28.1704(5) mandates that the court

shall take into consideration any legal obligation of the defendant to support a spouse, minor children, or other dependents and any moral obligation to support dependents to whom the defendant is providing or has in fact provided support.

In aptly fulfilling this statutory requirement, the circuit judge decided there was no reason to subject Schuster's wife to "any greater hardship as a result of her husband's actions than is necessary" and found "she should not be forced to lower her standard of living or be impoverished as a result."

[6] Pursuant to MCL 800.403; MSA 28.1703, the state may seek up to ninety percent of the prisoners' "assets" in satisfaction of their incarceration costs.

We granted leave to appeal to decide whether the reimbursement act subjects Schuster's pension to reimbursement for the costs of his incarceration despite the pension act's nonassignment provision.

II

Resolution of this matter requires this Court to examine an apparent conflict between two legislative enactments.

The State Correctional Facility Reimbursement Act provision at issue was originally enacted in 1935 as part of the Prison Reimbursement Act. The basic purpose of the act was to ensure that prisoners shoulder the burdensome cost of their incarceration, to the extent possible, rather than law-abiding taxpayers. In 1984, the act was amended and renamed the State Correctional Facility Reimbursement Act, with the same intent to "provide procedures for securing reimbursement to the state of the expenses incurred by the state for the cost of care of certain prisoners in state correctional facilities . . . ."[7] As amended, the reimbursement act contained the following sweeping definition of a prisoner's "assets" subject to the act:

(a) "Assets" means property, tangible or intangible, real or personal, belonging to or due a prisoner or former pris-

---

[7] MCL 800.401; MSA 28.1701. The act further directs:

At the time of the hearing on the complaint and order, if it appears that the prisoner has any *assets* which ought to be subjected to the claim of the state under this act, the court shall issue an order requiring any person, corporation, or other legal entity possessed or having custody of those assets to appropriate and apply those assets or a portion thereof toward reimbursing the state as provided for under this act. [MCL 800.404(3); MSA 28.1704(3).]

oner *including income or payments to such prisoner from* social security, worker's compensation, veteran's compensation, *pension benefits*, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, but does not include any of the following:

(i) The homestead of the prisoner up to $50,000.00 in value.

(ii) Money received by the prisoner from the state as settlement of a claim against the department from the prisoner.

(iii) A money judgment received by the prisoner from the state as a result of a civil action in which the department was named defendant and found to be liable.

(iv) Money saved by the prisoner from wages and bonuses paid the prisoner while he or she was confined to a state correctional facility. [MCL 800.401a; MSA 28.1701(1) (emphasis added).]

According to the plain language above, the Legislature, in 1984, decided to subject all pension payments to the reimbursement scheme specifically, and without exception. Moreover, the Legislature declined to include pension payments in the list of express statutory exceptions to the reimbursement act, which was revised by 1996 PA 286. MCL 800.401a(a)(i), (ii); MSA 28.1701(1)(a)(i), (ii). Nonetheless, Schuster claims that his pension payments are not subject to the reimbursement act. Indeed, he maintains that the nonassignment provision of the pension act has priority.

The Public School Employees Retirement Act was created in 1945 to establish and govern the pensions of public school employees.[8] Such pensions are

---

[8] 1945 PA 136.

expressly insulated from creditor attack through
"legal process" by the following:

> Except as otherwise provided in this section, *a retire-
> ment allowance,* an optional benefit, *or any other benefit
> accrued or accruing to a person* under this act, the reserves
> created by this act, and the money, investments, or income
> of those reserves *are exempt from* state, county, municipal,
> or other local tax *and are not subject to execution, gar-
> nishment, attachment, the operation of bankruptcy or
> insolvency laws, or other process of law. The right to a
> retirement allowance,* an optional benefit, or any other ben-
> efit accrued or accruing to a person under this act *is unas-
> signable, except as specifically provided in this act.* [MCL
> 38.1346(1);  MSA 15.893(156)(1) (emphasis added).]

In 1991, the Legislature amended this provision to
specifically subject pension payments to alimony,
child support orders, and eligible domestic relations
orders.[9] The Legislature has not, however, expressly
subjected pensions to the reimbursement provisions.

Given this apparent conflict between the State Cor-
rectional Facility Reimbursement Act and the Public
School Employees Retirement Act, this Court is asked
to resolve the relative priority of the two enactments
and whether the reimbursement act subjects
Schuster's pension payments to reimbursement for
incarceration costs, regardless of their source.

The Court of Appeals resolved this conflict in favor
of the pension act, finding Schuster's pension pay-
ments were entirely insulated from creditors and the
reimbursement provision.[10] The Court awarded the
pension act priority status because it found, as

---

[9] 1991 PA 47.  MCL 38.1346(4), (6);  MSA 15.893(156)(4), (6).

[10] 215 Mich App 347; 547 NW2d 332 (1996).

between the two statutes, that it was the more specific and was the most recently amended. We find this reasoning to be unpersuasive in this case. An application of the argument that priority rests with the most recently enacted or amended statute would, in this case, belittle the very serious inquiry into legislative intent that this task demands. As both statutes have been revised several times without reference to the other, reliance on the statutory construction rule that the most recent amendment controls would ultimately result in inconsistent determinations of relative priority over time.

Moreover, any inquiry into relative recency of amendments should include only pertinent or relevant amendments. In this case, both statutes have been revised several times and for reasons unrelated to the issues at hand. If our inquiry, however, is limited to relevant statutory changes, it would appear that the reimbursement act controls as the most recently amended with regard to the provisions at issue. While the act's predecessor, the Prison Reimbursement Act, was originally enacted in 1935, ten years before the pension act, the Legislature significantly revised the reimbursement act in 1984 PA 282, and for the first time specifically included all pensions as "assets" subject to the act. The reimbursement act was more recently amended by 1996 PA 286, which revisited and reduced the list of exceptions from its otherwise broad definition of "assets." The pension act, on the other hand, was initially enacted after the reimbursement act, but its most applicable revisions were made by 1985 PA 34-41, and 1991 PA 47. Neither of these revisions, however, specifically addressed the reimbursement act's inclusion of all pensions in its defini-

tion of "assets" subject to the act. Accordingly, we find that the reimbursement act was the most recently revised regarding the specific provisions at issue. The pension act would then serve as the general rule of excusing pensions from "legal process," and the reimbursement act would be an exception to that general rule. The Court of Appeals determination that the pension act controls because it is the most recently revised is flawed because it ignores the above analysis.

We also reject their cursory conclusion that the pension act controls because it is more specific. Such reasoning effectively nullifies the reimbursement language in the reimbursement act, which specifically includes all pensions, without exception, as assets. This Court has stated:

> Statutes in pari materia are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other. [*Detroit v Michigan Bell Telephone Co*, 374 Mich 543, 558; 132 NW2d 660 (1965) (citations omitted).]

We find that the pension act's nonassignment provision and the State Correctional Facility Reimbursement Act are in pari materia because both enactments address pensions. However, this Court has refused to apply rules that the more specific statute controls where such "strict construction . . . would defeat the main purpose of other statutes relating to

the same subject." *Id.* at 560, citing *Rathbun v Michigan*, 284 Mich 521; 280 NW 35 (1938). In this case, we refuse to adopt the Court of Appeals construction of the statutory provisions at issue because it effectively nullifies the express language in the reimbursement act and, consequently, defeats the main purpose of that statute.

The reimbursement act specifically, and without exception as to source, includes pension payments in the definition of "assets," and, therefore, subjects all pension payments to its reimbursement scheme. The Legislature did not add pension payments to the amended list of exceptions to the act's otherwise sweeping reimbursement provisions. Moreover, the plain and broad language of the reimbursement provisions at issue indicates a legislative intent to shift the burden of incarceration expenses to prisoners and from the taxpayers whenever possible. This primary intent is effectively ignored, and certainly frustrated, by the Court of Appeals holding that the pension act's general protection of pension payments from "legal process" has priority over the reimbursement act.

For these reasons, we find the reasoning employed by the Court of Appeals to be flawed. Moreover, we are unprepared, absent clear language evidencing such legislative intent, to allow Schuster to avoid his statutory obligations under the reimbursement act when all other non-pension act pension payments are subject to the reimbursement act. A contrary conclusion, without clear legislative intent, would nullify the plain language in the reimbursement act and be manifestly unfair to Michigan taxpayers and to the other prisoners required to reimburse the state for their incarceration expenses.

We note that this holding does not hinder the primary legislative purpose behind the pension provisions. The nonassignment provisions were designed to insulate retirement benefits from creditors. However, the state, when considering pension payments according to the reimbursement act, is not a "creditor," nor is the relationship between a prisoner and the state a typical debtor-creditor relationship. *State Treasurer v Sheko*, 218 Mich App 185, 189; 553 NW2d 654 (1996), citing *Auditor General v Hall*, 300 Mich 215, 221; 1 NW2d 516 (1942), and *Auditor General v Olezniczak*, 302 Mich 336, 350; 4 NW2d 679 (1942). Rather, a prisoner is an obligor because of his statutory, not voluntary or personal, obligation to reimburse the state under the reimbursement act for his incarceration expenses. Because of the unique relationship between prisoner and state, as obligor and obligee, respectively, a reimbursement action is not clearly the type of "other legal process" from which the pension act shields its pension payments. Therefore, our determination regarding relative priority gives greater effect to the language employed in both statutory provisions at issue without rendering any relevant provision surplusage or nugatory. See *Baker v General Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

Accordingly, we reverse the decision of the Court of Appeals on the issue of relative priority between the statutes at issue. We hold that the State Correctional Facility Reimbursement Act's provisions prevail because of their plain language, which squarely address the very question before this Court—the relationship between a prisoner's statutory duty to reim-

burse the state for his incarceration expenses, and pension payments.

III

Accordingly, we reverse the Court of Appeals reversal of the circuit court and reinstate the final circuit court order in this case.

MALLETT, C.J., and BRICKLEY, BOYLE, and TAYLOR, JJ., concurred with WEAVER, J.

KELLY, J. (*dissenting*). The issue in this case is whether Jon Schuster's public school retirement allowance is subject to legal process under the State Correctional Facility Reimbursement Act.[1] I agree with defendants that the Public School Employees Retirement Act (the pension act)[2] precludes the state from attaching Mr. Schuster's retirement allowance payments. Therefore, I respectfully disagree with the majority's conclusion in this case. I would affirm the decision of the Court of Appeals.

I

The State Correctional Facility Reimbursement Act was enacted to allow the government to seek reimbursement from certain prisoners for the cost of their incarceration. 1984 PA 282. Under it, reports are compiled regarding prisoner assets and the cost of prisoner care. MCL 800.402; MSA 28.1702. The Attorney General must seek reimbursement from a prisoner who has sufficient assets to permit recovery of

---

[1] MCL 800.401 *et seq.*; MSA 28.1701 *et seq.*

[2] MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.*

the statutorily prescribed portion of the prisoner's cost of care.[3]

In the instant case, the Attorney General discovered that Jon Schuster, who was serving a prison term for criminal sexual conduct, was receiving approximately $2,000 a month from his public school pension. Consequently, applying the reimbursement act, in 1992 the state sought part of Schuster's pension to reimburse it for his care. MCL 800.403; MSA 28.1703.[4] In its complaint, the state alleged that it has already expended approximately $22,000 for Schuster's care and would continue to expend money for the duration of his incarceration. In their answer, defendants responded that the state could not take any portion of Schuster's public school retirement allowance because it had been exempted from legal process by the pension act. MCL 38.1346(1); MSA 15.893(156)(1).

The trial court concluded that, despite the pension act, the pension could be considered in evaluating Jon Schuster's ability to pay the cost of his incarceration. The court did not allow the state to attach or garnish the pension directly. Rather, it permitted the state to obtain the funds after they had been paid to Schuster. Then, having considered Schuster's legal and moral obligations to his wife and dependents, the

---

[3] The Attorney General must have good cause to believe that (1) a prisoner has enough assets to recover at least ten percent of the estimated cost of care of the prisoner or (2) ten percent of the estimated cost of care of the prisoner for two years, whichever is less.

[4] The reimbursement act provides that not more than ninety percent of the assets of a prisoner may be taken for securing costs and reimbursement. MCL 800.403(3); MSA 28.1703(3). The trial court can award less than ninety percent after considering a prisoner's legal obligations to support a spouse and minor children and moral obligations to support dependents. MCL 800.404(5); MSA 28.1704(5).

court ordered Schuster to pay the state $1,000 a month, approximately half his retirement allowance.

The Court of Appeals reversed. 215 Mich App 347; 547 NW2d 332 (1996). Applying the rules of statutory construction, it held that the retirement allowance payments were protected by the pension act from legal process under the reimbursement act. It reasoned that the pension act was the more specific statute and controlling. *Id.* at 351-353. It also held that the payments were not subject to attachment once Jon Schuster received them. *Id.* at 354. We granted plaintiff's application for leave to resolve the apparent conflict between the pension act and the reimbursement act. 454 Mich 894 (1997).

II

A

As noted above, the reimbursement act provides that not more than ninety percent of a prisoner's "assets" may be recovered in an action by the state for prison reimbursement. MCL 800.403; MSA 28.1703. In 1992, assets were defined by the reimbursement act as:

> property, tangible or intangible, real or personal, belonging to or due a prisoner or former prisoner including income or payments to such prisoner from social security, worker's compensation, veteran's compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, but does not include any of the following:
>
> (i) The homestead of the prisoner up to $50,000.00 in value.

(ii) Money received by the prisoner from the state as settlement of a claim against the department from the prisoner.

(iii) A money judgment received by the prisoner from the state as a result of a civil action in which the department was named defendant and found to be liable.

(iv) Money saved by the prisoner from wages and bonuses paid the prisoner while he or she was confined to a state correctional facility. [MCL 800.401a; MSA 28.1701(1).][5]

Looking at the reimbursement act in isolation, one would have to conclude that public school retirement allowances are subject to attachment. Pensions are specifically mentioned as a type of asset recoverable by the state. However, the pension act expressly provides the contrary. It states, in pertinent part:

Except as otherwise provided in this section, a retirement allowance, an optional benefit, or any other benefit accrued or accruing to a person under this act, the reserves created by this act, and the money, investments, or income of those reserves are exempt from state, county, municipal, or other local tax and are not subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law. The right to a retirement allowance, an optional benefit, or any other benefit accrued or accruing to a person under this act is unassignable, except as specifically provided in this act. [MCL 38.1346(1); MSA 15.893(156)(1).][6]

Therefore, according to the express provisions of the two statutes, a conflict exists. The pension act

---

[5] In 1996, the statute was amended. Subsections (ii) and (iii) were deleted. 1996 PA 286.

[6] The pension act has given "retirement allowance" a specific definition. MCL 38.1307(5); MSA 15.893(117)(5). However, for purposes of this opinion, retirement allowance will be considered the equivalent of a pension.

declares that retirement allowance payments are not subject to legal process.[7] The reimbursement act declares that a portion of prisoners' pensions can be taken to pay for the cost of incarceration.

When two statutes conflict, we must interpret them to resolve the conflict. The primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). Rules of statutory construction have been developed to assist in determining intent. The Legislature is presumed to be familiar with the rules. *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 538; 164 NW2d 19 (1969).

Whenever possible, conflicting statutes should be interpreted to give each full force and effect. *In re Midland Publishing Co, Inc,* 420 Mich 148, 163; 362 NW2d 580 (1984). However, if it is not possible, and one is specific to the subject matter and the other only generally applicable, the specific statute prevails. *Id.*

The state argues that the reimbursement act addresses the subject matter involved in the case sub judice, reimbursement for prison expenses, whereas the pension act is silent on the subject. Hence, the reimbursement act must be found to be the more specific statute. I reject that reasoning. The conflict in the statutes is over the attachability of pension benefits, not over reimbursement for prison expenses.[8]

---

[7] The Legislature has expressly created exceptions to this rule. Retirement allowance payments are subject to alimony, child support orders, and eligible domestic relations orders. 1991 PA 47, MCL 38.1346(4), (6); MSA 15.893(156)(4), (6).

[8] This case differs from *State Treasurer v Gardner,* 222 Mich App 62; 564 NW2d 51 (1997). There, the reimbursement act allegedly conflicted with MCL 600.6023; MSA 27A.6023, which governed the general relation-

The pension act deals specifically with all aspects of retirement allowance payments. The reimbursement act mentions them only as one of many possible sources of reimbursement. Therefore, the pension act is the more specific statute and is controlling.

The majority rejects the application of this rule, finding that such a construction would defeat the main purpose of the reimbursement act. I agree that, in this case, the goal of the reimbursement act would be frustrated. The retirement allowance is the only asset belonging to Jon Schuster that the state can attach to reimburse his prison expenses. Unless the state can attach a portion of those payments, it will lose any chance of reimbursement.

However, if we gave priority to the reimbursement act, the primary purpose of the pension act would be nullified. I agree with the majority that one of the purposes of MCL 38.1346(1); MSA 15.893(156)(1), is to protect retirement allowance benefits from creditors and that the state is, technically, not a creditor. Nevertheless, the clear language of the statute protects retirement allowance benefits from "execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or *other process of law.*" MCL 38.1346(1); MSA 15.893(156)(1). (Emphasis supplied.) An action by the state seeking reimbursement under the reimbursement act must be regarded as a process of law. The provision is clear and unambiguous. It was intended to be all-encompassing. The Legislature has written specific exceptions for those situations where the protections are inapplicable.

---

ship between debtor and creditor. MCL 600.6023; MSA 27A.6023 did not deal solely with the attachability of pension benefits.

B

Moreover, where two statutes conflict and one statute protects private property, the statute giving the protection should be given priority. Any doubt is resolved in favor of the property owner. See 73 Am Jur 2d, Statutes, § 285, p 448. Here, the Legislature has not clearly indicated whether it intended that public pensions be forfeited to the state to pay for the cost of incarceration. Under the circumstances presented, the retiree should be entitled to keep the pension.

In conclusion, the Legislature may not have anticipated a conflict between the pension act and the reimbursement act. However, it is presumed to know the rules of statutory construction when drafting statutes. Because the pension act is the more specific statute, it should be given priority.[9] I would hold that the state is not entitled to directly attach defendant's retirement allowance.[10]

III

Next, the state argues that, even if the retirement allowance cannot be directly attached, the money can be taken once it is in Schuster's hands. Such an inter-

---

[9] The pension act should be given priority even if one accepts the majority's argument that the reimbursement act was amended more recently than the pension act. Where two statutes conflict, the specific is given priority over the general, even where the general statute was enacted last. *Imlay Twp Primary School Dist No 5 v State Bd of Ed*, 359 Mich 478, 485; 102 NW2d 720 (1960).

[10] I agree with the majority that taxpayers should not be obliged to shoulder the cost of prisoners' incarceration insofar as the prisoners have the assets to pay for their care. However, it is not this Court's job to manipulate the statutes and rules of construction to reach a result not clearly intended by the Legislature. If the Legislature wants public pensions to be treated the same as private pensions, the statutes can easily be amended.

pretation is contrary to the language in the pension act as well as to the statute's purpose. The pension act states that "retirement allowances" are protected. Retirement allowance is defined as "a payment for life or a temporary period provided for in this act to which a retirant, retirement allowance beneficiary, or refund beneficiary is entitled." MCL 38.1307(5); MSA 15.893(117)(5). Because the pension act protects *payments* to retirees, it must be interpreted to protect the payments immediately upon reaching the retiree's hands. The limitation of entitlement does not change this conclusion. I interpret that to mean that, if a retiree is mistakenly given a retirement allowance or is given an excessive amount, the state can file an action to recover the improper payment. It is not a limitation of protection.

Moreover, allowing the state to reach the payments after the retiree receives them would run counter to the purpose of the statute, which is to protect such payments from process. It is logical that public servants, who may earn less than employees in the private sector and who serve the community, would have special protection for their retirement benefits. The protection would be frustrated if the state were to circumvent the clear language of the statute. Therefore, I would also hold that, under the facts of this case, the pension act protects the payments after they are received by the Schusters.[11]

CAVANAGH, J., concurred with KELLY, J.

---

[11] There may come a point when the payments have been converted to nonexempt assets or commingled with other assets to the point where they lose their exempt character. However, in this case, no such allegations have been made. Therefore, we leave the question for another day.