*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* Guardianship of VERSALLE, Minors.

FOR PUBLICATION
October 15, 2020
9:00 a.m.

Nos. 351757, 351758
Muskegon Probate Court
LC Nos. 2019-002586-GM;
2019-002589-GM

Before: MURRAY, C.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father appeals by delayed leave granted[1] the probate court's orders appointing petitioner as guardian of his two minor children. We affirm.

In May 2019, petitioner[2] filed petitions seeking to be appointed as the guardian of respondent's two minor children under MCL 700.5204(2)(b) of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* Petitioner testified that the children had lived with her since September 2017, after respondent was evicted from his apartment and moved into a hotel. According to petitioner, respondent permitted the children to live with her because "[h]e couldn't provide for them in the hotel" and "didn't want them to be in the hotel." However, respondent did not give petitioner any type of legal authority over the children, such as a power of attorney. Petitioner testified that respondent did not give her legal authority because he did not want petitioner to take away his daughters. At the time the petitions for guardianship were filed, the children lived with petitioner. But, at the time of the hearing on the petitions, the children lived

---

[1] *In re Guardianship of Versalle*, unpublished order of the Court of Appeals, entered May 1, 2020 (Docket Nos. 351757 & 351758).

[2] Petitioner is respondent's mother, and thus, the paternal grandmother of the children.

-1-

with respondent in Texas because he came to Michigan to take them away.[3] The probate court granted the petitions for guardianship, and this appeal followed.

Respondent contests the constitutionality of MCL 700.5204(2)(b) by arguing that it does not impose the presumption in favor of a fit parent, thereby violating his constitutional right to raise his children. We disagree. "We review de novo questions of law involving statutory interpretation and questions concerning the constitutionality of a statute." *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009).

We have held that "[p]arents have a constitutionally protected right to make decisions about the care, custody, and management of their children." *Zawilanski v Marshall*, 317 Mich App 43, 49; 894 NW2d 141 (2016). Although this right is not absolute, the United States Constitution imparts " 'a presumption that fit parents act in the best interest of their children' and that 'there will normally be no reason for the State to inject itself into the private realm of the family' " by questioning the ability of fit parents to make the best decisions concerning the raising of their children. *Id*., quoting *In re Sanders*, 495 Mich 394, 410; 852 NW2d 524 (2014), quoting *Troxel v Granville*, 530 US 57, 68-69; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (opinion by O'CONNOR, J.). A "fit parent" has been defined "as a parent who 'adequately cares for his or her children.' " *Geering v King*, 320 Mich App 182, 190-191; 906 NW2d 214 (2017), quoting *Troxel*, 530 US at 68-69. "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel*, 530 US at 72-73 (opinion by O'CONNOR, J.). However, "the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor[.]" *Geering*, 320 Mich App at 188 (quotation marks and citations omitted).

Respondent asserts that the statutory presumption favoring natural parents under the Child Custody Act, MCL 722.21 *et seq.*, should also apply to guardianship proceedings. This statutory presumption is applicable to child custody disputes between the parent and a third person, and states as follows: "the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence." MCL 722.25(1). We have stated that "the Legislature plainly recognized the fundamental constitutional nature of a parent's interest in childrearing when it enacted the presumption that in all custody disputes involving natural parents and third persons, absent clear and convincing evidence to the contrary, parental custody served the child's best interests." *Heltzel v Heltzel*, 248 Mich App 1, 26; 638 NW2d 123 (2001). In the Child Custody Act context, this presumption was found to control over the presumption in favor of an established custodial environment. *Hunter*, 484 Mich at 263. Our Supreme Court stated that "*Troxel* established a floor or minimum protection against state intrusion into the parenting decisions of fit parents." *Id*. at 262. "The constitutional protection in *Troxel* centers on the 'traditional presumption that a fit parent will act in the best interest of his or her child.' " *Id*., quoting *Troxel*, 530 US at 69.

While we have only considered the constitutional protection afforded parents in the child custody context, such right must also be afforded in the guardianship context. Because "[p]arents

---

[3] The record reflects that petitioner was under the impression that respondent was just taking them to Texas for a visit. Instead, respondent kept the children.

-2-

have a constitutionally protected right to make decisions about the care, custody, and management of their children," this right cannot be dependent on the type of proceeding. *Zawilanski*, 317 Mich App at 49. In other words, a parent does not lose his or her constitutional right that would be afforded in a child custody case just because the parent is part of a guardianship proceeding instead of a custody case. Although not expressly held, we have stated that "[b]ecause the Child Custody Act of 1970 . . . and the guardianship statutes have the same purpose of promoting the best interests of children, the two statutes may be interpreted consistent with each other, or *in pari materia*." *Deschaine v St Germain*, 256 Mich App 665, 670 n 9; 671 NW2d 79 (2003) (internal citations omitted).[4] Therefore, we conclude that a parent's constitutional right to raise his or her child is also applicable in the guardianship context.[5]

With this right in mind, we next address the constitutionality of MCL 700.5204(2)(b). "Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014) (quotation marks and citation omitted). "Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity." *Phillips v Mirac, Inc*, 470 Mich 415, 423; 685 NW2d 174 (2004) (quotation marks and citation omitted). We

---

[4] With respect to reading statutes *in pari materia*, our Supreme Court has stated:

> Statutes in pari materia [sic] are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other. [*State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998) (quotation marks and citation omitted).]

[5] We reject respondent's contention that guardianship proceedings are basically custody proceedings. It is correct that under the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA), MCL 722.1101 *et seq.*, proceedings for guardianships are included in the definition "child-custody proceeding." But the UCCJEA's purpose is to prescribe "the powers and duties of the court in a child-custody proceeding involving this state and a proceeding or party outside of this state[.]" *Fisher v Belcher*, 269 Mich App 247, 260; 713 NW2d 6 (2005). There are several proceedings included under the UCCJEA. See MCL 722.1102(d). However, the Child Custody Act and EPIC both acknowledge the existence of the two distinct proceedings, i.e., a custody proceeding and a guardianship proceeding. See MCL 722.26b(1) ("a guardian or limited guardian of a child has standing to bring an action for custody of the child as provided in this act."); MCL 700.5210 ("Upon receipt of a copy of a judgment or an order of disposition in a child custody action regarding a minor that is sent to the court as provided in section 6b of the child custody act of 1970, 1970 PA 91, MCL 722.26b, the court shall terminate the guardianship or limited guardianship for that minor."). Therefore, guardianship proceedings are distinct from custody proceedings in the sense that custody of a minor is a separate determination.

conclude that the statute in this case, in essence, protects a parent's decision regarding his or her child until that decision reflects that the parent is no longer adequately caring for the child. See *Geering*, 320 Mich App at 190-191. As discussed below, the statute is not applicable unless a parent allows a child to permanently reside with another person, and the parent does not grant legal authority to the other person. MCL 700.5204 provides in relevant part:

> (1) A person interested in the welfare of a minor, or a minor if 14 years of age or older, may petition for the appointment of a guardian for the minor. The court may order the family independence agency or a court employee or agent to conduct an investigation of the proposed guardianship and file a written report of the investigation.

> (2) The court may appoint a guardian for an unmarried minor if any of the following circumstances exist:

> * * *

> (b) The parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed.

In other words, for the probate court to consider appointing an individual as a guardian, that individual must establish that (1) the parent permits the children to reside with another person; (2) the parent does not provide that other person with legal authority for the children's care; and (3) the children do not reside with the parent when the petition is filed. See MCL 700.5204(2)(b).

With respect to permission, we have held that "the permission referred to in the statute must be currently occurring—which would be shown by the child's actual presence in the care of another—when the guardianship issue arises[.]" *Deschaine*, 256 Mich App at 670. Moreover, we have recognized that a lower court may appoint a guardian "if parents permit their child to permanently reside with someone else when the guardianship issue arises." *Id*. at 669. As stated more recently, " 'residence' is a place of abode accompanied with the intention to remain." *Berger v Berger*, 277 Mich App 700, 703; 747 NW2d 336 (2008) (quotation marks and citation omitted). There must also be no grant of legal authority for a child's care and maintenance, which includes facilitating the child's "education and social or other activities," as well as "medical or other professional care, treatment, or advice." MCL 700.5215(c); see also *In re Martin*, 237 Mich App 253, 257; 602 NW2d 630 (1999) (addressing the powers and duties of a guardian under MCL 700.431, which was the precursor to MCL 700.5215).[6]

The presumption respondent seeks is that he was a fit parent. As detailed earlier, we agree that such presumption should apply to guardianship proceedings. "Fit parents" are parents that adequately provide for their children. See *Geering*, 320 Mich App at 190-191. This would include

---

[6] MCL 700.431 was repealed by PA 1998, No. 386, § 5215, otherwise known as MCL 700.5215, in 2000.

providing for the "moral, emotional, mental, and physical welfare of the minor[.]" See *id.* at 188 (quotation marks and citation omitted). However, by coming under the purview of MCL 700.5204(2)(b), respondent had essentially stopped providing adequate care for the children, i.e., became unfit. In other words, MCL 700.5204(2)(b) provides an opportunity to rebut the presumption that respondent was a fit parent.[7] The record reflects that the children were with petitioner for two years and that there was never any indication as to when the children would return to respondent, if ever. Petitioner testified that respondent was evicted from his apartment here in Michigan and that he allowed the children to live with her while he stayed in a hotel. Respondent then moved to Texas and still allowed the children to live with petitioner.

Under MCL 700.5204(2)(b), the children had permanently lived with petitioner, and there is no evidence to indicate that respondent intended anything otherwise.[8] There was also evidence that respondent received death benefits from the mother's death but he did not provide any of the money to the children. Furthermore, petitioner testified that she rarely received any money from respondent to help care for the children. Respondent also never granted petitioner legal authority to care for the children. Therefore, because respondent had left the children with petitioner permanently without granting petitioner legal authority to care for the children, respondent had stopped providing adequate care for the children. The requirements of MCL 700.5204(2)(b) essentially demonstrate a situation where a parent has stopped providing adequate care to a child and a guardian needs to step in to provide for the child. Therefore, the statute implicitly protects a parent's constitutional right to the care, custody, and maintenance of his or her child by not allowing a guardianship to be imposed in circumstances where the parent adequately provides for

---

[7] Notably, our Supreme Court has recognized that there is no requirement to demonstrate parental unfitness in the context of the Child Custody Act. As explained, "*Troxel* carefully limited the constitutional scope of the parental presumption to the extent that a court need give decisions by fit custodial parents only a presumption of validity." *Hunter*, 484 Mich at 268 (quotation marks and citation omitted). The rationale set forth in *Hunter* persuades us that parental unfitness also need not be demonstrated in the guardianship context:

> Defendant would have the Court require a demonstration of parental unfitness before allowing the parental presumption to be rebutted where no such demonstration is required by [the Child Custody Act]. That would in effect, give unlimited deference to all parenting decisions of parents deemed to be fit. However, "[a] determination that an individual has a fundamental right does not foreclose the State from ever limiting it." *In re RA*, 153 NH 82, 102, 891 A2d 564 (2005). Such a determination is not constitutionally mandated. To hold that parental unfitness is a mandatory prerequisite to rebutting the parental presumption would be inconsistent with the CCA's emphasis on best interests and lack of reference to fitness. [*Hunter*, 484 Mich at 268 n 40.]

[8] Respondent was not present at the hearing to contradict anything petitioner testified about. Therefore, respondent's contention that "[a]lthough [petitioner] testified that she did now know that [he] planned for the children to reside with him permanently in Texas, [petitioner] prepared the petition originally in January 2019 and did not file until May 9, 2019, indicating she was aware of the potential change" is baseless. There was only evidence to support petitioner's position.

-5-

the child, i.e., is a fit parent. Such protection prohibits the state from interfering with that parent's constitutional right.

Respondent likens this case to *Troxel* and argues that MCL 700.5204(2)(b) is just as broad as the Washington statute that was interpreted in *Troxel*. The *Troxel* case involved a visitation dispute between a child's natural mother and the paternal grandparents. *Troxel*, 530 US at 60 (opinion by O'CONNOR, J.). The grandparents sought to obtain more frequent visitation with the child than the respondent-mother wished to offer. *Id*. at 60-61. There was a statute in place that permitted "[a]ny person" to petition a superior court "for visitation rights at any time," and authorizing that court to grant such visitation rights whenever "visitation may serve the best interest of the child." *Id*. at 60 (quotation marks omitted). The United States Supreme Court characterized the statute as "breathtakingly broad" and noted that it gave no deference to a child's parent. *Id*. at 67. The Supreme Court also stated that the statute allowed "a court [to] disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." *Id*. The Supreme Court went on to hold that the visitation statute violated the respondent-mother's fundamental right to make decisions regarding her child's upbringing. *Id*. at 68-70 (opinion by O'CONNOR, J.) (stating that there was no allegation the respondent-mother was unfit and that "there is a presumption that fit parents act in the best interests of their children").

In this case, the guardianship statute does not interfere with respondent's fundamental right to raise his children as the Washington statute did in *Troxel*. While MCL 700.5204 allows "a person interested in the welfare of a minor" to petition a court "for the appointment of a guardian for the minor," there are specific requirements that must be met under MCL 700.5204(2)(b) before the court can grant a guardianship. Specifically, it requires that the parent allow the child to permanently reside with another person, without granting legal authority to the other person. See *Deschaine*, 256 Mich App at 669. Unlike *Troxel*, MCL 700.5204(2)(b) does not allow a presiding court to makes its own determination of the child's best interests. Rather, there must be a showing of permanent residency and lack of legal authority. There must also be a showing that the other person filed the petition for guardianship while the child was living with him or her. Without meeting all three of the requirements, the court cannot grant the guardianship. MCL 700.5204(2)(b) is not nearly as broad as the statute in *Troxel* because it limits the trial court's determination to the requirements of the statute. The statute in *Troxel* allowed anyone to petition for visitation of a child and left it to the trial court to determine the child's best interests. The language of the Washington statute "effectively permit[ted] any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review." *Troxel*, 530 US at 67. Under MCL 700.5204(2)(b), a parent's decision only comes under state-court review when the parent has effectively stopped providing adequate care to the child. Therefore, if a parent does not allow a child to permanently live with another person, or grants legal authority to the person who the child permanently lives with, then that parent's constitutional right to raise the child will not be interfered with.

Respondent also argues that there was insufficient evidence to grant a guardianship. We disagree. "A circuit court's factual findings are reviewed for clear error, which occurs when this Court is left with a firm and definite conviction that a mistake was made." *Deschaine*, 256 Mich App at 668.

Petitioner presented evidence that the children were living with her for two years. Petitioner testified that she did not know whether respondent would have the children live with him again and only indicated that he would visit or have the children visit him. We have recognized that past permission is irrelevant; it is the permission that is ongoing at the time that the petition for guardianship is filed that is relevant. See *Deschaine*, 256 Mich App at 671-673. The petition was filed on May 9, 2019. Respondent retrieved the children on June 15, 2019, a month after the petition was filed. The record reflects that respondent permitted the children to live with petitioner at the time that the petition was filed. See *id*. at 670. ("[T]he permission referred to in the statute must be currently occurring—which would be shown by the child's actual presence in the care of another—when the guardianship issue arises."). Moreover, the record reflects that respondent did not provide petitioner with legal authority for the children's care, such as a power of attorney delegating parental authority to petitioner, even though the children had lived with petitioner, with respondent's permission, for two years. Petitioner testified that respondent told her that he did not want to give her legal authority. Finally, petitioner presented evidence that the children lived with her at the time that the petition was filed. It was a month after the petition was filed that respondent came to Michigan and took the children to Texas. Because respondent decided not to attend the hearing to present his own evidence, petitioner's testimony is uncontradicted.

In sum, we conclude that MCL 700.5204(2)(b) is constitutional and does not infringe on a parent's constitutional right to the care, custody, and management of his or her children. See *Zawilanski*, 317 Mich App at 49. Rather, the statute implicitly affords a parent the constitutional presumption that he or she is a fit parent, while also providing a potential guardian the opportunity to rebut that presumption.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron